## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re: | (Chapter 11) |
| ESCO, LTD., | Case No. 23-12237 (DER) |
| Debtor. | |
| ESCO, LTD. LIQUIDATING TRUST, Plaintiff, | Adv. Pro. No. 24-00120 (DER) |
| v. | |
| GREG GREENBERG, THEODORE GREENBERG, BETH GREENBERG, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 1, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 2, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 3, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 4, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 5, AMANDA GREENBERG, AND TIFFANY SHADE, | |
| Defendants. | |

### DEFENDANTS' MOTION TO DISMISS

Defendants Greg Greenberg, Theodore Greenberg, Beth Greenberg, Greenberg Family 2012 Irrevocable Trust No. 1, Greenberg Family 2012 Irrevocable Trust No. 2, Greenberg Family 2012 Irrevocable Trust No. 3, Greenberg Family 2017 Irrevocable Trust No. 4 (incorrectly named in the Complaint as Greenberg Family 2012 Irrevocable Trust No. 4), Greenberg Family 2017 Irrevocable Trust No. 5 (incorrectly named in the Complaint as Greenberg Family 2012

Irrevocable Trust No. 5), Amanda Greenberg, and Tiffany Shade (the "Defendants"), by and through undersigned counsel, hereby move this Court for an Order dismissing the complaint (the "Complaint") filed by The ESCO, Ltd. Liquidating Trust (the "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6), applicable in this proceeding pursuant to Fed. R. Bankr. P. 7012.

The grounds and authorities for this motion are set forth in the accompanying memorandum of law.

WHEREFORE, the Defendants respectfully request that this Court dismiss the Complaint with prejudice.

Dated:  July 29, 2024

**SAUL EWING LLP**

_/s/ Ashley N. Fellona_
Ashley N. Fellona (Fed. Bar No. 21118)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8701
ashley.fellona@saul.com

-and-

Lucian B. Murley (_pro hac vice_ forthcoming)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6898
luke.murley@saul.com

-and-

Turner N. Falk (_pro hac vice_ forthcoming)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia PA 19102
Telephone: (215) 972-8415
turner.falk@saul.com

_Counsel to the Defendants_

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re:<br><br>ESCO, LTD.,<br><br>Debtor. | (Chapter 11)<br><br>Case No. 23-12237 (DER) |
| ESCO, LTD. LIQUIDATING TRUST,<br>Plaintiff,<br><br>v.<br><br>GREG GREENBERG, THEODORE GREENBERG, BETH GREENBERG, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 1, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 2, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 3, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 4, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 5, AMANDA GREENBERG, AND TIFFANY SHADE,<br><br>Defendants. | Adv. Pro. No. 24-120 (DER) |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Ashley N. Fellona (Fed. Bar No. 21118)
SAUL EWING LLP
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8701
ashley.fellona@saul.com

Lucian B. Murley (*pro hac vice* forthcoming)
SAUL EWING LLP
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6898
luke.murley@saul.com

Turner N. Falk (*pro hac vice*
forthcoming)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia PA 19102
Telephone: (215) 972-8415
turner.falk@saul.com

*Counsel to the Defendants*

Dated: July 29, 2024

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 2

JURISDICTION AND VENUE ........................................................................................... 4

BACKGROUND ................................................................................................................... 4

SUMMARY OF COMPLAINT ........................................................................................... 5

ARGUMENT ........................................................................................................................ 6

    A.    Motion to Dismiss Standard ................................................................................ 6

    B.    The Complaint is Inadequately Pled Pursuant to Rule 8 ..................................... 7

    C.    The Plaintiff Did Not Plead the Debtor's Insolvency ......................................... 9

    D.    The Plaintiff Cannot Avoid the Tax Withholdings Because They Were Not
        Property of the Estate ........................................................................................ 12

    E.    The Plaintiff Cannot Recover the Direct Tax Payments Because The
        Defendants Were Not Transferees ..................................................................... 13

    F.    The Plaintiff Cannot Avoid the Preference Period Transfers ........................... 15

        1.    The Complaint Does Not Plead that Tiffany Shade or the Trusts
            Were Insiders ....................................................................................... 15

        2.    The Transfer to Greenberg Family 2017 Irrevocable Trust No. 4
            Was Not on Account of An Antecedent Debt ...................................... 17

        3.    Greg Greenberg, Amanda Greenberg, and Tiffany Shade Provided
            Subsequent New Value to the Debtor ................................................. 17

    G.    The Plaintiff Cannot Avoid the Transfers Because They Were Made for
        Reasonably Equivalent Value ........................................................................... 20

    H.    The Complaint Does Not Plead the Existence of, or any Facts Supporting,
        Alleged Breach of Fiduciary Duties ................................................................. 23

    I.    The Complaint Does Not Meet the Heightened Pleading Standard
        Pursuant to Rule 9(b) ....................................................................................... 25

CONCLUSION ................................................................................................................... 26

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................1, 6

*BAA, PLC v. Acacia Mut. Life Ins. Co.*, 929 A.2d 1 (Md. 2007).......................................9

*Beaman v. Barth (In re AmeriLink, Ltd.)*, No. 09-01055-8-JRL, 2011 WL 864953 (Bankr. E.D.N.C. Mar. 11, 2011)........................................................................................7

*Begier v. IRS*, 496 U.S. 53 (1990)..................................................................................12

*Butler v. David Shaw, Inc.*, 72 F.3d 437 (4th Cir. 1996) ................................................16

*Crumpton v. Stephens (In re Northlake Foods, Inc.)*, 715 F.3d 1251 (11th Cir. 2013).................22

*Dobin v. Hill (In re Hill)*, 342 B.R. 183 (Bankr. D.N.J. 2006)......................................15

*Englander v. Blunt (In re Essex Constr., LLC)*, 624 B.R. 103 (Bankr. D. Md. 2020)..................13

*Fick v. Perpetual Title Co.*, 694 A.2d 138 (Md. Ct. Spec. App. 1997) ...........................10

*Field v. United States (In re Abatement Envtl. Res., Inc.)*, 102 F. App'x 272 (4th Cir. 2004) ......................................................................................................................21

*French v. Liebmann (In re French)*, 440 F.3d 145 (4th Cir. 2006) ...............................13

*Froelich v. Erickson*, 96 F. Supp. 2d 507 (D. Md. 2000), *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, 5 F. App'x 287 (4th Cir. 2001)...............................................24

*Gold v. United States (In re Kenrob Info. Tech. Sols.)*, 474 B.R. 799 (Bankr. E.D. Va. 2012) ......................................................................................................................22

*Graham v. Serafis (In re Vill. Red Rest. Corp.)*, 2021 Bankr. LEXIS 2377 (Bankr. S.D.N.Y. Aug. 31, 2021) ................................................................................................21

*Hovis v. Ducate (In re Ducate)*, 369 B.R. 251 (Bankr. D.S.C. 2007) ...........................21

*Iannacone v. IRS (In re Bauer)*, 318 B.R. 697 (Bankr. D. Minn. 2005).......................13

*In re AstroPower Liquidating Trust*, 335 B.R. 309 (Bankr. D. Del. 2005) ....................7

*In re Ballantyne Brands, LLC*, 656 B.R. 117 (Bankr. W.D.N.C. 2023).........................22

*In re Caremerica, Inc.*, 409 B.R. 737 (Bankr. E.D.N.C. 2009) ....................................7

*In re Dewey & LeBoeuf LLP*, 518 B.R. 766 (Bankr. S.D.N.Y. 2014) ...........................17

ii

*In re Doctors Hosp. of Hyde Park, Inc.*, 507 B.R. 558 (Bankr. N.D. Ill. 2013) ...........................10

*In re EBC I, Inc.*, 380 B.R. 348 (Bankr. D. Del. 2008) ....................................................................10

*In re JKJ Chevrolet, Inc.*, 412 F.3d 545 (4th Cir. 2005).............................................................18, 20

*In Re: Jones Truck Line, Inc.*, 130 F.3d 323 (8th Cir. 1997)...............................................................18

*In re Nomus–North Carolina, Inc.*, No. 01-50373, 2004 WL 574510 (Bankr. M.D. N.C. 2004) ................................................................................................................................................18

*In re Operations NY LLC*, 490 B.R. 84 (Bankr. S.D.N.Y. 2013) .......................................................10

*In re PennySaver USA Publ'g, LLC*, 602 B.R. 256 (Bankr. D. Del. 2019) .........................................8

*In re Persinger*, 545 B.R. 896 (Bankr. E.D.N.C. 2016) .....................................................................21

*In re Roti*, 271 B.R. 281 (Bankr. N.D. Ill. 2002) ...............................................................................21

*Kann v. Kann*, 344 Md. 689, 690 A.2d 509 (1997) ............................................................................23

*Leibersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.)*, 280 B.R. 103 (Bankr. E.D. Pa. 2002)..............................................................................................................................10

*Lyon v. Campbell*, 707 A.2d 850 (Md. Ct. Spec. App. 1998)...........................................................23

*Lyon v. United States*, 68 F. App'x 461 (4th Cir. 2003) ..................................................................12

*Mendiono v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008)........................................6

*Molovinsky v. Fair Emp. Council of Greater Washington, Inc.*, 839 A.2d 755 (Md. Ct. Spec. App. 2003) ..................................................................................................................................9

*Moody v. Security Pac, Business Credit*, 971 F.2d 1056 (3d Cir. 1992) .......................................10

*Plank v. Cherneski*, 469 Md. 548, 231 A.3d 436 (2020) ..................................................................23

*Shulman v. Progressive Com. Cas. Co.*, No. CV DKC 19-1709, 2020 WL 758239 (D. Md. Feb. 14, 2020) ...............................................................................................................................25

*Smith v. Litchford & Christopher, P.A. (In re Bay Vista of VA., Inc.)*, 428 B.R. 197 (Bankr. E.D. Va. 2010)...............................................................................................................................10

*Stone v. Trump*, 400 F. Supp. 3d 317 (D. Md. 2019)........................................................................19

*Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298 (D. Md. 2000) .............25

*Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc.)*, 442 B.R. 852 (Bankr. S.D. Fla. 2010) .................................................................................................................................8

iii

*United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157 (9th Cir. 2017) .........................7

*Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001) ................................................24

**FEDERAL STATUTES**

11 U.S.C. § 101(2)(A) ..............................................................................15

11 U.S.C. § 101(31)(B) .............................................................................15

11 U.S.C. § 101(31)(E) .............................................................................15

11 U.S.C. §§ 544(b)(2) ..........................................................................4, 6

11 U.S.C. § 547(a)(2) ...............................................................................17

11 U.S.C. § 547(b)(2) ...............................................................................17

11 U.S.C. § 547(b)(3) ...............................................................................9

11 U.S.C. § 547(b)(4)(B) ..........................................................................15

11 U.S.C. § 547(f) ...................................................................................9

11 U.S.C. § 548(a)(1)(B)(i) ....................................................................5, 21

11 U.S.C. § 548(a)(1)(B)(ii) .......................................................................9

11 USC § 550 ...................................................................................6, 13, 15

28 U.S.C. § 157(b) ...................................................................................4

28 U.S.C. § 1334 .....................................................................................4

28 U.S.C. §§ 1408, 1409 ............................................................................4

I.R.C. §§ 3102(a), 3402(a) ........................................................................12

Fed. R. Bankr. P. 2004 ..............................................................................4

Fed. R. Bankr. P. 7008 ..............................................................................7

Fed. R. Bankr. P. 7009 .............................................................................25

Fed. R. Bankr. P. 7012 ..............................................................................4

Fed. R. Civ. P. 8(a)(2) .................................................................4, 7, 8, 9, 26

Fed. R. Civ. P. 9(b) ........................................................................4, 25, 26

iv

Fed. R. Civ. P. 12(b)(6)................................................................................4, 6

**STATE STATUTES**

Md. Code §§ 15-201 *et. seq.*......................................................................6

Md. Code § 15-204 ....................................................................................9

Md. Code §§ 15-204, 205, 206 ................................................................21

Md. Code § 15-205 ....................................................................................9

Md. Code § 15-206 ....................................................................................9

**OTHER AUTHORITIES**

2 Collier on Bankruptcy ¶ 101.45 (15th ed. Rev. 2006) ...........................15

## PRELIMINARY STATEMENT[1]

The Complaint is full of legal conclusions and colorful adjectives and adverbs, but woefully short of facts that would plausibly suggest liability against the Defendants. It seeks to claw back prepetition payments, but does not specify the amount and date of the payments. It ignores the Plaintiff's obligation to allege facts relating to insolvency, blithely and conveniently concluding—with no discussion of real financial facts—that the Debtor was insolvent for the entire three-year period prepetition. It questions the use of the company's credit card, but makes no specific allegations of improper use.

Plaintiff must do more in order to sufficiently state a claim against the Defendants. The Federal Rules and case law under *Iqbal* and its progeny demand it. What is more, Plaintiff cannot claim—as many other trustees credibly can—that it is unable to allege specific facts because of lack of knowledge, and therefore the pleading standards should be softened. The Committee (represented by the same counsel as Plaintiff) conducted an extensive review of the relevant documents, with the Defendants consenting to the Committee's Rule 2004 examination and voluntarily producing over 2,500 documents. The Court should certainly take this into account in determining whether the Complaint plausibly states a claim against Defendants: the Plaintiff had plenty of documents and other materials to develop the facts regarding the potential claims against the Defendants, and the best that Plaintiff can come up with is a flimsy collection of legal conclusions and unsupported aspersions against the management and owners of the Debtor.

The Complaint should be denied with prejudice.

---

[1] Any capitalized term not otherwise defined herein shall have the same meaning as that ascribed to it elsewhere in this Brief.

52309511.11

## INTRODUCTION AND SUMMARY OF ARGUMENT

The ESCO, Ltd. Liquidating Trust ("Plaintiff"), the liquidating trust established in the bankruptcy of debtor ESCO Ltd. (the "Debtor"), filed the complaint in the instant case (the "Complaint") against Defendants Greg Greenberg, Theodore Greenberg, Beth Greenberg, Greenberg Family 2012 Irrevocable Trust No. 1, Greenberg Family 2012 Irrevocable Trust No. 2, Greenberg Family 2012 Irrevocable Trust No. 3, Greenberg Family 2017 Irrevocable Trust No. 4 (incorrectly named in the Complaint as Greenberg Family 2012 Irrevocable Trust No. 4), Greenberg Family 2017 Irrevocable Trust No. 5 (incorrectly named in the Complaint as Greenberg Family 2012 Irrevocable Trust No. 5), Amanda Greenberg, and Tiffany Shade (the "Defendants") seeking to avoid alleged preferential or constructively fraudulent transfers, and bringing additional claims for breach of fiduciary duty and intentional fraud against the Debtor's former top officers.

The Complaint does not identify the date or amount of most challenged transfers, and therefore does not sufficiently allege a claim to avoid such transfers. It includes no exhibits, such as those that normally accompany an avoidance action complaint, providing facts relating to the nature of the debt paid, the date of payment, and the amount of payment. It generally repeats the statutory elements (e.g., simply repeating the elements of section 547 of the Bankruptcy Code, but framing them as conclusions) without supporting facts, and alleges that some of the challenged transfers might (or might not) be made without reasonably equivalent value, or on account of an antecedent debt. The Complaint should be dismissed on this basis alone, since it does not fairly apprise the Defendants of what is actually being challenged.

Plaintiff's avoidance action claims fail on multiple, independent levels. For most of the avoidance action claims, it is Plaintiff's burden to allege facts plausibly suggesting insolvency at the time of the transfer. However, the Complaint neglects to plead the Debtor's insolvency or other financial distress, so all avoidance claims are ill-pled. It seeks to avoid and recover tax

withholdings that—as a matter of law—were not estate property, or payments made directly to taxing authorities where the Defendants were not transferees; these portions of the Complaint must be dismissed with prejudice. The Complaint seeks to avoid as a preference an equity distribution payment not made on account of an antecedent debt. This claim must also be dismissed with prejudice. The Complaint does not plausibly plead the insider status of certain Defendants, so— as a matter of law—the applicable preference period must be limited to ninety days prepetition (rather than one year).

The Complaint seeks to avoid salary payments to Greg Greenberg, Amanda Greenberg, and Tiffany Shade as preferences or constructively fraudulent transfers, but does not attempt to rebut the presumption that the value of an employee's compensation is equal to the value of the services provided. In addition to failing on that prima facie issue, the Complaint ignores the defenses that are clear from the face of the Complaint: the subsequent new value and reasonably equivalent value provided by these Defendants' services. Accordingly, the avoidance claims against Greg Greenberg, Amanda Greenberg, and Tiffany Shade must be dismissed.

The Complaint does not identify how Greg Greenberg or Theodore Greenberg allegedly breached their fiduciary duties in approving compensation, and cannot overcome the business judgment rule. The Plaintiff cannot plausibly state a claim for breach of fiduciary without specifying the facts underlying this legal conclusion. In other words, Plaintiff cannot merely conclude "breach of fiduciary duty" and have it stick. This claim is ill-pled and must be dismissed.

The Complaint alleges intentional fraud against the Debtor's former president, but does not plead the time, contents, or recipient of his allegedly fraudulent statements. This does not meet the heightened pleading standard for intentional fraud.

In sum, the Complaint is a nonspecific set of legal conclusions that does not state a claim or put the Defendants on notice of the facts supporting claims against them. It must be dismissed entirely with prejudice.

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are 11 U.S.C. §§ 544, 547, 548, 550, Fed. R. Bankr. P. 7008, 7009, 7012 and Fed. R. Civ. P. 8, 9, 12.

Pursuant to Rule 7012-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, Defendants do not consent to the entry of a final order by the Court in connection with this Motion, if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

On March 31, 2023 (the "Petition Date"), ESCO filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

During the pendency of this case, the Official Committee of Unsecured Creditors moved pursuant to Fed. R. Bankr. P. 2004 to obtain documents from certain Defendants, primarily Greg Greenberg. (Bkr. D.I. 307). The Defendants did not oppose the motion and consented to the requested relief. (Bkr. D.I. 314). Greg Greenberg produced thousands of documents to the Official Committee of Unsecured Creditors – which was represented by the same counsel as the Plaintiff. Counsel for the Official Committee of Unsecured Creditors never raised any issues or suggested

Greg Greenberg did not comply with his production responsibilities. None of those documents are included as exhibits to the Complaint.

On November 16, 2023, the Court confirmed the Debtor's plan of liquidation, which established the Plaintiff and vested the Plaintiff with the right to pursue the Debtor's and the estate's causes of action. (Bkr. D.I. 389).

The Plaintiff filed the Complaint on May 20, 2024, commencing the instant adversary proceeding. By agreement between the Defendants and the Plaintiff, the Defendants' time to respond to the Complaint was set for July 22, 2024, and later extended to July 29, 2024.

## SUMMARY OF COMPLAINT

The Complaint primarily seeks to avoid and recover transfers made to the Defendants. The Complaint does not include a list of most of the transfers it seeks to avoid, or when those transfers were made. It merely alleges that,

> during the three years before the Petition Date (the "Transfer Period") and one year before the Petition Date (the "Preference Period"), the Debtor was insolvent yet made avoidable transfers to the insider Defendants in the form of equity distributions, compensation, and reimbursements for credit card expenses (each a "Transfer," and together the "Transfers"). These Transfers to the insider Defendants total nearly $9 million.

Compl. ¶ 35.

The Complaint brings six counts against the Defendants:

**Count I** seeks to avoid as preferences under Bankruptcy Code Section 547 any of these Transfers that occurred between March 31, 2022 and the bankruptcy filing date of March 31, 2023. This claim is apparently brought against all Defendants.

**Count II** seeks to avoid Transfers as constructively fraudulent under Bankruptcy Code Section 548(a)(1)(B). This claim is apparently brought against all Defendants and seeks recovery of all Transfers made since March 31, 2021.

**Count III** seeks to avoid these transfers under the Maryland Uniform Fraudulent Transfer Act ("MUFCA"), Md. Code §§ 15-204 *et. seq*., made applicable by Bankruptcy Code Section 544(b)(2).  This claim is apparently brought against all Defendants and seeks recovery of all Transfers made since March 31, 2020.

**Count IV** seeks recovery of the amounts of the Transfers avoided by Counts I-III pursuant to Bankruptcy Code Section 550, and is brought against all Defendants.

**Count V** is brought against Greg and Theodore Greenberg.  It seeks an unliquidated recovery on account of alleged fiduciary breaches by Greg and Theodore Greenberg.

**Count VI** is brought only against Greg Greenberg.  It seeks an unliquidated amount on account of alleged intentional fraud for Greg Greenberg's use of the company credit card for personal expenses.

## ARGUMENT

### A.    Motion to Dismiss Standard

Under Federal Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  Dismissal is appropriate where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiono v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. Proc. 8(a)(2)).

6

In evaluating this Motion, the Court may look not only to the Complaint, but also to matters of public record, such as documents filed in the Debtor's chapter 11 proceeding. *See United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1171 (9th Cir. 2017) (holding that trial court may properly consider prior court proceedings before that trial court in a motion to dismiss).

**B.    The Complaint is Inadequately Pled Pursuant to Rule 8**

Pursuant to Fed. R. Civ. P. 8(a)(2), applicable pursuant to Fed. R. Bankr. P. 7008, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

The Complaint is largely one for avoidance of the Transfers. A complaint merely alleging that a debtor made transfers is insufficient to plead an avoidance claim. *In re Caremerica, Inc.*, 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009) (preference claim dismissed because complaint's unsupported "assertion that "the debtors transferred its (sic) funds into bank accounts operated by the debtors' principals" is merely a conclusory statement that lacks factual support."). Other courts have given guidance on when a complaint sufficiently pleads facts supporting a preference claim. *Beaman v. Barth (In re AmeriLink, Ltd.)*, No. 09-01055-8-JRL, 2011 WL 864953, at *2 (Bankr. E.D.N.C. Mar. 11, 2011) ("To comply with the heightened pleading standards for § 547 claims, the complaint must include (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preferential transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) amount of the transfer.").

The purpose of the Fed. R. Civ. P. 8(a)(2) pleading standard is "to apprise the defendant fairly of the charges made against him." *In re AstroPower Liquidating Trust*, 335 B.R. 309, 333 (Bankr. D. Del. 2005).

At the very least, an avoidance complaint must identify "who transferred what to whom and when," because only that level of specificity will permit a defendant "to mount whatever

defenses may be available." *Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc.)*, <u>442 B.R. 852, 855</u>–56 (Bankr. S.D. Fla. 2010). "[C]omplaints that identify the dates, amounts, source, and transferee of each of the alleged transfers successfully support claims of constructive fraudulent transfer under Fed. R. Civ. Pro. 8(a)(2)'s pleading standard." *In re PennySaver USA Publ'g, LLC*, <u>602 B.R. 256, 266</u> (Bankr. D. Del. 2019).

The Complaint attempts to challenge Transfers made at unspecified times in unspecified amounts. In the "Claims for Relief" section laying out the counts in the Complaint, the Plaintiff seeks to avoid alleged constructively fraudulent transfers if they were made during the relevant lookback period and "were not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received." Compl. ¶¶ 56, 60. This is not an allegation of facts that must be taken a true, it is an allegation that if certain facts are true the Plaintiff might state a claim. This kind of hedging, conditional statement cannot adequately allege facts supporting a claim.

The Complaint refers to the Debtor's records but attaches none of them. The Debtor's Statement of Financial Affairs (the "<u>SOFA</u>") discloses transactions to certain Defendants during the year prepetition. (Bkr. D.I. 149). A true and correct copy of the SOFA is attached hereto as **Exhibit A**, and may be judicially noticed by the Court in consideration of this Motion. The SOFA demonstrates the inadequacy of the Complaint: the salary history shows dozens of transfers to various Defendants over a one-year period that are described as "Gross Salary," including amounts withheld for taxes and not received by any Defendant. *See* Ex. A at 32-35. From the allegations in the Complaint, the Defendants cannot determine with certainty which transactions are being challenged, and whether the Plaintiff seeks to recover the gross amount (including amounts withheld for taxes), or only the net amount.

The Complaint essentially amounts to a statement that, if certain unpled facts are true, Plaintiff can recover some amount transferred during some time period. This indistinct pleading is insufficient under Fed. R. Civ. P. 8, and must be dismissed entirely.

### C.    The Plaintiff Did Not Plead the Debtor's Insolvency

The avoidance causes of action in Counts I, II and III all require the Plaintiff to plead at least one of three financial distress criteria:

- Book-value insolvency, meaning debts exceeding assets (11 U.S.C. § 547(b)(3); 11 U.S.C. § 548(a)(1)(B)(ii)(I); Md. Code § 15-204);
- Inadequate capitalization (11 U.S.C. § 548(a)(1)(B)(ii)(II); Md. Code § 15-205); or
- Intent to incur debts beyond the debtor's ability to repay (11 U.S.C. § 548(a)(1)(B)(ii)(III); Md. Code § 15-206).

Insolvency is presumed under Section 547 for the 90 days prepetition. 11 U.S.C. § 547(f). The Plaintiff seeks to avoid alleged preference to insiders up to a year prepetition. The Plaintiff does not have a presumption of insolvency for the period from 365 to 91 days prepetition (the "Insider Lookback Period").

To assess insolvency, courts compare a debtor's assets and liabilities in a straightforward book-value calculation. *Molovinsky v. Fair Emp. Council of Greater Washington, Inc.*, 839 A.2d 755, 766 (Md. Ct. Spec. App. 2003) *citing F.S. Bowen Elec. Co. v. United States Fid. & Guar. Co.*, 256 F.2d 46, 49 (4th Cir. 1958) (stating that the "[d]etermination of the issue of solvency ... requires an appraisal of probable liabilities as well as the salable value of assets"). "[W]here a business is a 'going concern,' considering goodwill in a solvency analysis seems highly appropriate." *BAA, PLC v. Acacia Mut. Life Ins. Co.*, 929 A.2d 1, 19 (Md. 2007) *citing* Md. Code § 15-202(a).

"To determine whether a debtor is undercapitalized (or retains unreasonably small assets), courts look to whether the debtor has an 'inability to generate sufficient profits to sustain

9

operations ....'" *Smith v. Litchford & Christopher, P.A. (In re Bay Vista of VA., Inc.)*, <u>428 B.R. 197, 225</u> (Bankr. E.D. Va. 2010).  "Among the relevant data are cash flow, net sales, gross profit margins, and net profits and losses." *Moody v. Security Pac, Business Credit*, <u>971 F.2d 1056, 1073</u> (3d Cir. 1992).

Intent to incur debts beyond the ability to repay is shown by an analysis of the subjective intent of the debtor when making the transfer.  *Leibersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.)*, <u>280 B.R. 103, 116</u>–17 (Bankr. E.D. Pa. 2002); *see also In re Operations NY LLC*, <u>490 B.R. 84, 98</u> (Bankr. S.D.N.Y. 2013) (under the Bankruptcy Code); *Fick v. Perpetual Title Co.*, <u>694 A.2d 138, 149</u> (Md. Ct. Spec. App. 1997) (affirming denial of plaintiff's summary judgment motion under MUFCA "because we do not know the extent of [debtor's] assets or liabilities at any relevant point in time, we cannot infer what [debtor] intended or believed prior to making any transfer.").  This element is established if "the debtor could not have reasonably believed that it would be able to pay its debts as they matured." *In re Doctors Hosp. of Hyde Park, Inc.*, <u>507 B.R. 558, 635</u>–36 (Bankr. N.D. Ill. 2013) *citing Barrett v. Continental Ill. Nat'l Bank & Trust Co.*, <u>882 F.2d 1</u> (1st Cir. 1989), *cert. denied*, <u>494 U.S. 1028</u> (1990); *see also In re EBC I, Inc.*, <u>380 B.R. 348, 359</u> (Bankr. D. Del. 2008).

These financial distress criteria cannot be assumed just because a debtor in is bankruptcy; each requires at least some level of factual support.  The Complaint does not adequately plead any of these financial distress criteria.  It formulaically recites the statutory elements without elaboration.  Compl. ¶¶ 4, 52, 55, 60.  This is insufficient to plead these essential elements of the avoidance claims.

The Complaint contains only one other relevant allegation, a footnote that alleges that the "Debtor incurred operating losses of approximately $280,000 and $1.76 million in fiscal years

2020 and 2021, respectively, which had a significant negative impact on the Debtor's financial position and liquidity." Compl. at ¶ 35 & n.11. This allegation does not provide any factual support for alleged financial distress in 2022 or 2023, and cannot support a finding of insolvency during those fiscal years.

The existence of net operating losses is irrelevant to the calculation of book-value insolvency; it says nothing about the Debtor's assets or liabilities except to show a potentially-valuable tax attribute: deductible net operating losses. In fact, the Debtor's schedules show that on the Petition Date its assets were $15,878,355.41 and its liabilities were $16,055,635.73. (Bkr. D.I. 148 at 10). At the most acute moment of the Debtor's financial struggles, and after paying a number of professionals in preparation for the bankruptcy, the Debtor was only book value insolvent by approximately $177,000.00. For comparison, the Debtor's gross revenue for the year prepetition exceeded $35 million. Ex. A at 10. It is implausible to suggest the Debtor was insolvent for a substantial period of time before the Petition Date; the judicially noticeable facts suggest that the Debtor only tipped into book value insolvency mere weeks before the Petition Date.

The existence of net operating losses is merely one fact that could potentially support a finding of insufficient capitalization, but is insufficient on its own. The Complaint pleads no other facts regarding inadequate capitalization.

The existence of net operating losses in 2020 and 2021 does not demonstrate the amount of the Debtor's debts at those times, or the Debtor's intent in incurring debts at those times. Many companies generate net operating losses and are subsequently able to repay their debts; the Complaint does not even attempt to address the other facts necessary to establish that the Debtor intentionally incurred debts beyond its ability to repay. The SOFA indicates that in the 2020 and

11

2021 fiscal years, the Debtor had gross revenue exceeding $63 million and $55 million, respectively.  Ex. A at 10.  Compared to the overall size of the business, the reported net operating losses are comparatively small and do not plausibly indicate an unbearable debt load.

The Complaint does not even bother to address alleged inadequate capitalization.  The Complaint contains no facts regarding the Debtor's intent in incurring debts, the amount of those debts, the amount of the Debtor's assets, the Debtor's cash flows, net sales, or profit margins for any period.

The Complaint does not plead the Debtor's insolvency, inadequate capitalization or intent to incur debts beyond its ability to repay.  Count I must be dismissed as to all Transfers during the Insider Lookback Period.  Counts II and III must be dismissed entirely.

> ### D.  The Plaintiff Cannot Avoid the Tax Withholdings Because They Were Not Property of the Estate

The avoidance causes of action in Counts I, II and III all require the Plaintiff to plead a transfer of some property of the debtor.

"The Internal Revenue Code requires employers to withhold federal social security, hospital insurance, and income taxes from the wages of their employees and to turn over the withheld amounts to the United States.  *See* I.R.C. §§ 3102(a), 3402(a). The withheld taxes constitute a special fund held in trust for the benefit of the United States." *Lyon v. United States*, 68 F. App'x 461, 466 (4th Cir. 2003).  A debtor's "payments of trust-fund taxes to the IRS from its general accounts were not transfers of 'property of the debtor,' but were instead transfers of property held in trust for the Government pursuant to [Internal Revenue Code] § 7501.  Such payments therefore cannot be avoided as preferences." *Begier v. IRS*, 496 U.S. 53, 67 (1990). This principle applies to Section 544 and 548 as well – both require a transfer of an "interest of

the debtor in property," and amounts in trust are not debtor property.  *French v. Liebmann (In re French)*, 440 F.3d 145, 151 (4th Cir. 2006) (*Begier's* principles apply to Section 548 actions).

The Complaint identifies "approximately $6 million" in compensation paid to Greg Greenberg, Amanda Greenberg and Tiffany Shade that the Plaintiff seeks to avoid.  This approximate number is the gross compensation, not reduced by trust fund tax withholdings.  As such, the Complaint seeks to avoid amounts that were withheld for taxes that were not property of the Debtor.  The Complaint must be dismissed with prejudice as to any amounts withheld for taxes.

### E.    The Plaintiff Cannot Recover the Direct Tax Payments Because The Defendants Were Not Transferees

Pursuant to Section 550 of the Bankruptcy Code, "the trustee may recover, for the benefit of the estate, the property transferred … from (1) the initial ***transferee*** of such transfer…" 11 USC § 550(a)(1) (emphasis added).  The Defendants are not transferees of the alleged "distributions" to equity holders that were actually direct payments to taxing authorities.

"When a debtor pays a creditor to satisfy a debt guaranteed by a third party, the creditor is the initial transferee and the guarantor, who is no longer liable for the debt, is the entity for whose benefit the transfer is made."  *Englander v. Blunt (In re Essex Constr., LLC)*, 624 B.R. 103, 130 (Bankr. D. Md. 2020) *citing Lowry v. Security Pacific Business Credit, Inc. (In re Columbia Data Products, Inc.)*, 892 F.2d 26, 29 (4th Cir. 1989).  Where a debtor directs that money be withheld from a distribution and paid to a taxing authority, the taxing authority, not the distributee, is the initial transferee of the funds.  *Iannacone v. IRS (In re Bauer)*, 318 B.R. 697, 702 (Bankr. D. Minn. 2005).

The Debtor was a pass-through entity for tax purposes; its tax liability was passed to the equity owner Defendants.  The Debtor then paid the passed-through tax liability directly to the applicable taxing authority.

13

The Complaint alleges that the Plaintiff has "identified $1,859,860 in distributions to the equity holder insider Defendants." Compl. at ¶ 39. The Complaint then includes a chart clearly describing most of these payments as tax payments, not equity distributions. *Id*. The following distributions (the "Direct Tax Payments") totaling $1,717,824.00 were tax payments paid directly to the applicable taxing authorities:

| Month Paid | Description | Amount |
| --- | --- | --- |
| July 2020 | VA Tax Payment - 2019 Form VA8879 - Greg | $187.00 |
| July 2020 | MD Tax Payment - 2019 Form MD502 – Greg | $68,677.00 |
| July 2020 | IRS 2019 Extension – Ted | $450,000.00 |
| July 2020 | IRS 2019 Extension – Greg | $383,276.00 |
| July 2020 | IRS 2019 Trust #4 | $48,848.00 |
| August 2020 | IRS Trust #4 Estimated 2020 payment #1 & #2 | $17,500.00 |
| September 2020 | IRS Trust #4 Estimated 2020 payment #3 | $8,750.00 |
| December 2020 | 2020 Form 1040-ES – Ted | $175,000.00 |
| December 2020 | 2020 Form 1040-ES – Greg | $170,000.00 |
| May 2021 | IRS 2020 Form 4868 – Ted | $10,000.00 |
| May 2021 | IRS 2020 Form 4868 – Greg | $52,000.00 |
| June 2021 | 2021 Form 1040 ES - Ted Q2 | $107,500.00 |
| June 2021 | 2021 Form 1040 ES - Greg Q2 | $55,000.00 |
| September 2021 | 1040 ES Q3 2021 – Greg | $27,500.00 |
| September 2021 | 1040 ES Q3 2021 - Trust #4 | $4,186.00 |
| September 2021 | 1040 ES Q3 2021 – Ted | $53,750.00 |

14

| Month Paid | Description | Amount |
|------------|-------------|--------|
| January 2022 | 1040 ES Q3 2021 – Greg | $27,500.00 |
| January 2022 | 1040 ES Q3 2021 - Trust #4 | $4,400.00 |
| January 2022 | 1040 ES Q3 2021 – Ted | $53,750.00 |

The Defendants were not the transferees of the Direct Tax Payments, the applicable taxing authorities were.  The Plaintiff cannot recover the Direct Tax Payments from the Defendants, and Count IV seeking recovery of the Direct Tax Payments pursuant to 11 U.S.C. § 550 must be dismissed with prejudice.

**F.    The Plaintiff Cannot Avoid the Preference Period Transfers**

**1.    The Complaint Does Not Plead that Tiffany Shade or the Trusts Were Insiders**

The Complaint seeks to avoid Transfers made up to one year prepetition as preferences. The Plaintiff may not avoid Transfers made during the 90 days prepetition unless the Complaint adequately pleads that each Defendant is an insider.  11 U.S.C. § 547(b)(4)(B) (one-year lookback period for transfers to insiders).

An insider of a corporation includes the directors and officers of a debtor, persons in control of a debtor or relatives thereof.  11 U.S.C. § 101(31)(B).  "A former spouse, however, is not related by affinity, and therefore 'a former spouse will not be considered a relative.'" *Dobin v. Hill (In re Hill)*, 342 B.R. 183, 199 (Bankr. D.N.J. 2006) *quoting* 2 Collier on Bankruptcy ¶ 101.45 (15th ed. Rev. 2006).

Insiders also include affiliates of the debtor.  11 U.S.C. § 101(31)(E).  An affiliate is, in relevant part, an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor."  11 U.S.C. § 101(2)(A).

15

Outside these statutory categories, a non-statutory insider "must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996) *quoting Hunter v. Babcock (In re Babcock Dairy Co.)*, 70 B.R. 662, 666 (Bankr. N.D. Ohio 1986).

The Complaint alleges that Tiffany Shade "is the ex-wife of Brad Greenberg (the deceased son of Theodore and deceased brother of Greg and Amanda)." Compl. ¶ 29. As a former spouse of a family member of a director or officer she is not a relative of any of the Debtor's officers or controllers, and is not an insider.

The Complaint alleges that Greenberg Family 2012 Irrevocable Trust No. 1, Greenberg Family 2012 Irrevocable Trust No. 2, Greenberg Family 2012 Irrevocable Trust No. 3, Greenberg Family 2012 Irrevocable Trust No. 4, and Greenberg Family 2012 Irrevocable Trust No. 5 (collectively, the "Trusts") were equity holders of the Debtor. Compl. ¶¶ 23-27. Mere equity ownership does not make the Trusts statutory insiders, and the Complaint does not plead any facts regarding the Trusts' voting rights or ownership percentages.

The Complaint includes no allegations that Tiffany Shade or the Trusts had any authority to dictate corporate decision-making or asset disposition. It includes no allegations that Tiffany Shade or the Trusts ever attempted to assert or exercise such authority. The Complaint does not plead any facts that would establish non-statutory insider status.

Because the Complaint does not plead that Tiffany Shade and the Trusts are insiders of the Debtor, all claims against them for Transfers during the Insider Lookback Period must be dismissed.

16

**2.    The Transfer to Greenberg Family 2017 Irrevocable Trust No. 4 Was Not on Account of An Antecedent Debt**

A transfer may only be avoided as a preference if it is made "for or on account of an antecedent debt owed by the debtor before such transfer was made."  11 U.S.C. § 547(b)(2).

The Bankruptcy Code recognizes the distinction between debts – amounts owed by the debtor – and interests – which give the holder some form of ownership in the debtor.

Distributions to equity are generally made on account of the interest holder's ownership rights, not on account of pre-existing obligations.  As a result, "[e]quity distributions are not ordinarily considered transfers made on account of an antecedent debt."  *In re Dewey & LeBoeuf LLP*, 518 B.R. 766, 789 (Bankr. S.D.N.Y. 2014).

The April 2022 Transfer of $90,523.00 to Greenberg Family 2017 Irrevocable Trust No. 4 is identified in the Complaint as a "distribution to the equity holder."  Compl. ¶ 39.  The Complaint identifies no pre-existing obligation of the Debtor to make that distribution.  Taking the Complaint on its face, this Transfer was made on account of Greenberg Family 2017 Irrevocable Trust No. 4's ownership interest in the Debtor and cannot be avoided as a preference.  This claim must be dismissed as to Greenberg Family 2017 Irrevocable Trust No. 4 with prejudice.

**3.    Greg Greenberg, Amanda Greenberg, and Tiffany Shade Provided Subsequent New Value to the Debtor**

A transfer cannot be avoided as a preference to the extent that the transferee provided "subsequent new value," defined as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation."  11 U.S.C. § 547(a)(2).  Because Greg Greenberg, Amanda Greenberg, and Tiffany

Shade (the "<u>Employee Defendants</u>") provided subsequent new value, their compensation cannot be avoided.

The value of services provided by an employee is rebuttably presumed to be equal to their compensation. *In Re: Jones Truck Line, Inc.*, <u>130 F.3d 323, 328</u> (8th Cir. 1997) ("Absent contrary evidence, the value of employee services is presumed to equal the wages and benefits the employer contracted to pay"); *In re Nomus–North Carolina, Inc.*, No. 01-50373, <u>2004 WL 574510</u> (Bankr. M.D. N.C. 2004) ("Value of an employee['s] services is presumed to equal wages and benefits that an employer contracted to pay.")

In the Fourth Circuit, any new value provided after an alleged preferential transfer reduces the transferee's preference liability if that new value is paid for via an avoidable transfer. *In re JKJ Chevrolet, Inc.*, <u>412 F.3d 545, 552</u> (4th Cir. 2005) (adopting the "subsequent advance" theory and rejecting the idea that Section 547(c)(4) requires new value to remain unpaid because "the proper inquiry is whether the new value has been paid for by an 'otherwise unavoidable transfer'").

After the first allegedly-avoidable transfer was made to Greg Greenberg, he continued to provide the management and day-to-day operations services though the petition date. Compl. ¶ 20. He is entitled to a presumption that his services were equal to the wages and benefits he was paid by the Debtor. The Complaint does not include specific facts to rebut this presumption; it baldly states his salary "exceeded the market rate" but does not even describe the responsibilities of Greg Greenberg's role. Compl. ¶ 42.

The Complaint does not rebut the presumption of value for services as to Amanda Greenberg either. The Complaint does not plead her job title or the services she was supposed to perform. Instead it merely alleges that "she appeared to do no work." Compl. ¶ 43. This is another conditional statement – it does not actually plead that Amanda did no work. The Complaint's

52309511.11

other allegations are similarly irrelevant: she allegedly did not send any emails after 2011, but the Complaint does not indicate whether she had a company email, used her personal email for responses or even received company-related emails since 2011.  Compl. ¶ 43.  Lastly, the Complaint alleges that Amanda lives in Florida where the Debtor has no offices.  Compl. ¶ 43. The recent prevalence of remote work demonstrates how this allegation is irrelevant to whether Amanda Greenberg performed services, and remote work has been available for many business jobs for decades.

The Complaint does not rebut the presumption of value for services as to Tiffany Shade either.  Instead, it pleads the only allegations regarding Tiffany Shade's services "upon information and belief."  Compl. ¶ 44.  "[B]ecause a complaint must plausibly state a claim, using 'upon information and belief' as a pleading device survives a motion to dismiss only where 'the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'"  *Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) *quoting Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014) *quoting Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  The Plaintiff is a post-confirmation trust created by the Debtor's plan, represented by the same counsel as the Official Committee of Unsecured Creditors that preceded it.  There has been no barrier preventing the Plaintiff from obtaining the necessary facts to make well-pled allegations against Tiffany Shade.  The Plaintiff has access to the Debtor's books and records, summary material prepared before and during the bankruptcy, and copious documents and emails obtained from the Defendants.  Tiffany Shade is not withholding her job title or job responsibilities; the Plaintiff has simply failed to investigate them.  The Complaint's allegations on information and

belief must be disregarded.  Without those allegations, there are no facts to rebut the presumption that Tiffany Shade provided services equal in value to her salary.

Pursuant to *JKJ Chevrolet*, each pay period the Employee Defendants "subsequently advanced" additional services to the Debtor that were worth the amount of their compensation for that pay period.  With each pay period, the potential preference liability from the earlier transfer was satisfied by the subsequent, allegedly-preferential transfer.  The end result of this analysis is that, at most, the Plaintiff could recover the last prepetition Transfer as a preference.

In fact, Greg Greenberg's salary history shows that he continued to provide services, but did not receive compensation between June 17, 2022 and October 21, 2022.  Ex. A at 33.  This spans eight (8) bi-weekly pay periods where Greg Greenberg provided subsequent new value that reduces any preference liability for earlier transfers.   At the usual salary, this represents $259,938.48 in subsequent new value.

Payments to the Employee Defendants were made bi-weekly on account of work done two weeks before.  In the two pay periods leading up to the Petition Date, Greg Greenberg did not receive payment for his services at all.  Ex. A at 8.  Similarly, Amanda Greenberg and Tiffany Shade did not receive payment for their last period worked.  Ex. A at 8-9.  The subsequent new value provided by these unpaid final pay periods eliminates any remaining preference liability.  Per the facts alleged in the Complaint and the salary history in the SOFA, this claim must be dismissed as against the Employee Defendants.

G.    **The Plaintiff Cannot Avoid the Transfers Because They Were Made for Reasonably Equivalent Value**

To avoid salary payments as constructively fraudulent transfers, the Plaintiff must show that they were paid without receiving reasonably equivalent value in exchange, or without fair

20

consideration.  11 U.S.C. § 548(a)(1)(B)(i) (reasonably equivalent value); Md. Code §§ 15-204, 205, 206 (fair consideration).  These concepts involve the same basic analysis.

The Plaintiff must affirmatively show a lack of fair consideration or reasonably equivalent value.  *Field v. United States (In re Abatement Envtl. Res., Inc.)*, 102 F. App'x 272, 277 (4th Cir. 2004) (plaintiff must demonstrate lack of fair consideration); *Hovis v. Ducate (In re Ducate)*, 369 B.R. 251, 262 (Bankr. D.S.C. 2007) (Plaintiff's burden to show lack of reasonably equivalent value, and "This burden of proof never shifts.").

The date for defining reasonable equivalence of value is the date of the transfer.  *In re Persinger*, 545 B.R. 896, 903 (Bankr. E.D.N.C. 2016).  While there is no precise formula for determining reasonable equivalence, an important element of this consideration is fair market value.  *In re Roti*, 271 B.R. 281, 295 (Bankr. N.D. Ill. 2002).

"Services provided in return for salary payments are presumed to constitute 'fair consideration' and 'reasonably equivalent value'" unless clearly excessive given the employee's responsibilities.  *Graham v. Serafis (In re Vill. Red Rest. Corp.)*, 2021 Bankr. LEXIS 2377, at *22 (Bankr. S.D.N.Y. Aug. 31, 2021).

As one court elaborated,

> Generally, payments of salary are presumed to have been made for fair consideration.  *In re TC Liquidations LLC*, 463 B.R. at 268. This rebuttable presumption makes for 'tough sledding' by bankruptcy trustees inclined to attack employee compensation as fraudulent transfers.  For a trustee to succeed, he must either establish that 1) the compensation payments were made in bad faith (i.e., were actual fraudulent conveyances under 548(a)(1)(A)) or else 2) the compensation was excessive in light of the Defendants' employment responsibilities (i.e., a constructive fraudulent conveyance under 548(a)(1)(B)).  *Id.*; see also *In re S. Textile Knitters*, 65 F. App'x. 426, 437 (4th Cir.2003); *Cilco Cement Corp. v. White*, 55 A.D.2d 668, 668, 390 N.Y.S.2d 178 (2d Dep't 1976) (salary paid to the president of the company was not a fraudulent conveyance because there was "no evidence that his salary was either excessive or unreasonable, or that the corporation did not receive full value in return."); *Mills v. Everest Reinsurance Co.*, 410 F.Supp.2d 243, 254 (S.D.N.Y. 2006).

21

*In re Ballantyne Brands, LLC*, <u>656 B.R. 117, 139</u>–40 (Bankr. W.D.N.C. 2023).

An S corporation's payment of tax liabilities passed through to owners is reasonably equivalent value if the company is obligated to provide for tax disbursements. *Crumpton v. Stephens (In re Northlake Foods, Inc.)*, <u>715 F.3d 1251, 1256</u> (11th Cir. 2013) (transferee was entitled to judgment on the pleading for constructive fraudulent transfer claim because agreement by debtor to pay passed-through tax liability in exchange for S corporation status "provides [the debtor] with valuable benefits by virtue of its S-corporation election"); *Gold v. United States (In re Kenrob Info. Tech. Sols.)*, <u>474 B.R. 799, 803</u> (Bankr. E.D. Va. 2012) (unwritten "agreement between the shareholders and the corporation [to elect S corporation tax status] was valuable consideration to the corporation where the tax payments on behalf of the shareholders represented no more than the pass-through tax liability").

As discussed above, the Direct Tax Payments were payments to taxing authorities made by the Debtor on account of passed-through tax liability. If the Debtor had not been a pass-through tax entity and had not made the Direct Tax Payments on behalf of the applicable Defendants, the Debtor would have been obligated to make those tax payments at the entity level anyway. Although the Direct Tax Payments are not avoidable for reasons discussed above, they also provided reasonably equivalent value and fair consideration to the Debtor.

As for other compensation payments to Greg Greenberg, the Complaint does not identify which payments it seeks to avoid or how much it seeks to recover. It generally alleges that some of the Transfers were made on account of inflated salary. As discussed above, this is insufficient to state a claim.

It is also insufficient to rebut the presumption that Greg Greenberg's compensation was reasonably equivalent or fair consideration for his services. The Complaint pleads that Greg

Greenberg "ran the Debtor's day-to-day business" during the entire relevant period.  Compl. ¶ 20.
The Complaint does not plead anything about his job responsibilities, or any other facts
substantiating the alleged inflation of his compensation.  The Complaint does not plead anything
about the size or complexity of the Debtor's business, how similarly-situated officers at other
companies were compensated or how Greg Greenberg's compensation was determined.  The
Complaint pleads that his compensation exceeded that of his predecessor, but omits any mention
of when Greg Greenberg took over from his predecessor.[2]  The Complaint does not rebut the
presumption that compensation is reasonably equivalent and given for fair consideration.  Counts
II and III must be dismissed as to Greg Greenberg.

### H.    The Complaint Does Not Plead the Existence of, or any Facts Supporting, Alleged Breach of Fiduciary Duties

Under Maryland law, "there is no universal or omnibus tort for the redress of breach of
fiduciary duty by any and all fiduciaries."  *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521
(1997).  To state a claim for fiduciary breach, the Plaintiff must show "(i) the existence of a
fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and
(iii) harm to the beneficiary."  *Plank v. Cherneski*, 469 Md. 548, 599, 231 A.3d 436, 466 (2020)
*quoting Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 (D. Md. 2000), *aff'd sub nom. Froelich v.
Senior Campus Living, LLC*, 5 F. App'x 287 (4th Cir. 2001).

The Complaint does not identify the fiduciary duties allegedly breached.  It formulaically
pleads that Greg and Theodore Greenberg breached "fiduciary duties of care and loyalty."  Compl.
¶ 67.  A breach of the duty of loyalty arises under Maryland law when a corporate officer prefers
himself to the corporation, generally by appropriating a business opportunity.  *Lyon v. Campbell*,
707 A.2d 850, 864 (Md. Ct. Spec. App. 1998).  Likewise, a breach of the duty of care arises from

---

[2]    Greg Greenberg assumed his current role in 2013.

an allegation that the fiduciary made an unjustifiable decision to the detriment of the corporation. *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001) ("[D]irectors are required to perform their duties in good faith, in a manner they reasonably believe to be in the best interest of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances."). Corporate decision making is protected by the business judgment rule, and a court will impose liability for a "decision only if the challenger produces evidence establishing that the directors acted in bad faith." *Froelich v. Erickson*, 96 F. Supp. 2d 507, 520 (D. Md. 2000) *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, 5 F. App'x 287 (4th Cir. 2001) *citing Nat'l Ass'n for the Advancement of Colored People v. Golding*, 342 Md. 663, 679 A.2d 554 (Md. 1996).

The Complaint identifies only one decision as an alleged fiduciary breach: "Greg Greenberg and Theodore Greenberg breached these duties by approving salaries for Greg Greenberg, Amanda Greenberg, and Tiffany Shade that were grossly disproportionate to the value each employee provided to the Debtor." Compl. ¶ 68.

It is not clear how Theodore Greenberg could have breached his duty of loyalty for this decision, since he did not advantage himself in any way by approving salaries for other people.

As discussed above, the Complaint has failed to undercut the presumption that compensation to the Employee Defendants is proper. However, even if that presumption is rebutted, the Complaint does not plead facts showing bad faith by Greg or Theodore Greenberg. In fact, the Complaint pleads nothing at all about their mental state or the process by which they allegedly approved the challenged compensation. These allegations are insufficient to overcome the business judgment rule. The Complaint does not state a claim for fiduciary breach and must be dismissed.

## I.    The Complaint Does Not Meet the Heightened Pleading Standard Pursuant to Rule 9(b)

Counts VI alleges intentional fraud.  This claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) (applicable pursuant to Fed. R. Bankr. P. 7009), which provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

To plead fraud, a complaint must specifically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313–14 (D. Md. 2000) *quoting Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D. Md. 1983); *see also Shulman v. Progressive Com. Cas. Co.*, No. CV DKC 19-1709, 2020 WL 758239, at *4 (D. Md. Feb. 14, 2020).  In *Shulman*, a fraud claim was dismissed when the complaint did not describe what the defendants gained from the alleged fraud, when the fraud occurred or who the fraudulent statements were given to.

The Complaint alleges that the Debtor's former president "knowingly and intentionally misrepresented that payments made using his company credit card were for work related expenses.  Instead, many or all the expenses were personal in nature." Compl. ¶ 71.  This is the extent of the factual allegations supporting the alleged fraud.  The Complaint does not allege who these false representations were made to, when those representations were made, what those representations contained or how much he allegedly obtained by making these representations.  The Complaint instead notes the total amount of spending on the company card and avers that some portion of that total, incurred at some point for unidentified purchases, was for personal expenses.  Compl. ¶ 45 (Former president "spent $671,095.54 on the company credit card, largely for personal

expenses…").  This cursory and conclusory allegation is totally insufficient to meet the heightened pleading standard of <u>Fed. R. Civ. P. 9(b)</u>, and Count VI must be dismissed.

## CONCLUSION

The Complaint does not sufficiently plead specific facts, and must be dismissed entirely pursuant to <u>Fed. R. Civ. P. 8</u>.  In the alternative, the Complaint does not plead the Debtor's insolvency or financial distress, so Counts I through IV seeking avoidance and recovery must be dismissed.  The Complaint does not identify how any Defendant breached a fiduciary duty, so Count V must be dismissed.  The Complaint does not meet the heightened pleading requirements of <u>Fed. R. Civ. P. 9</u>, so Count VI for intentional fraud must be dismissed.

26

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re: | (Chapter 11) |
| ESCO, LTD., | Case No. 23-12237 (DER) |
| Debtor. | |
| ESCO, LTD. LIQUIDATING TRUST, Plaintiff, | Adv. Pro. No. 24-00120 (DER) |
| v. | |
| GREG GREENBERG, THEODORE GREENBERG, BETH GREENBERG, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 1, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 2, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 3, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 4, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 5, AMANDA GREENBERG, AND TIFFANY SHADE, | |
| Defendants. | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants Greg Greenberg, Theodore Greenberg, Beth Greenberg, Greenberg Family 2012 Irrevocable Trust No. 1, Greenberg Family 2012 Irrevocable Trust No. 2, Greenberg Family 2012 Irrevocable Trust No. 3, Greenberg Family 2017 Irrevocable Trust No. 4 (incorrectly named in the Complaint as Greenberg Family 2012 Irrevocable Trust No. 4), Greenberg Family 2017 Irrevocable Trust No. 5 (incorrectly named in the Complaint as Greenberg Family 2012

Irrevocable Trust No. 5), Amanda Greenberg, and Tiffany Shade (the "Defendants"), by and through undersigned counsel, hereby move this Court for an Order dismissing the complaint (the "Complaint") filed by The ESCO, Ltd. Liquidating Trust (the "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6), applicable in this proceeding pursuant to Fed. R. Bankr. P. 7012.

The grounds and authorities for this motion are set forth in the accompanying memorandum of law.

WHEREFORE, the Defendants respectfully request that this Court dismiss the Complaint with prejudice.

Dated: July 29, 2024

**SAUL EWING LLP**

_/s/ Ashley N. Fellona_
Ashley N. Fellona (Fed. Bar No. 21118)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8701
ashley.fellona@saul.com

-and-

Lucian B. Murley (_pro hac vice_ forthcoming)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6898
luke.murley@saul.com

-and-

Turner N. Falk (_pro hac vice_ forthcoming)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia PA 19102
Telephone: (215) 972-8415
turner.falk@saul.com

_Counsel to the Defendants_

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re: | (Chapter 11) |
| ESCO, LTD., | Case No. 23-12237 (DER) |
| Debtor. | |

| | |
|---|---|
| ESCO, LTD. LIQUIDATING TRUST, Plaintiff, | Adv. Pro. No. 24-120 (DER) |
| v. | |
| GREG GREENBERG, THEODORE GREENBERG, BETH GREENBERG, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 1, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 2, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 3, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 4, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 5, AMANDA GREENBERG, AND TIFFANY SHADE, | |
| Defendants. | |

### <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Ashley N. Fellona (Fed. Bar No. 21118)
SAUL EWING LLP
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8701
ashley.fellona@saul.com

Lucian B. Murley (*pro hac vice* forthcoming)
SAUL EWING LLP
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6898
luke.murley@saul.com

52309511.11

Turner N. Falk (*pro hac vice*
forthcoming)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia PA 19102
Telephone: (215) 972-8415
turner.falk@saul.com

*Counsel to the Defendants*

Dated: July 29, 2024

4

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 2

JURISDICTION AND VENUE ........................................................................ 4

BACKGROUND ................................................................................................ 4

SUMMARY OF COMPLAINT ........................................................................ 5

ARGUMENT .................................................................................................... 6

    A.    Motion to Dismiss Standard.................................................................... 6

    B.    The Complaint is Inadequately Pled Pursuant to Rule 8 ....................... 7

    C.    The Plaintiff Did Not Plead the Debtor's Insolvency ............................ 9

    D.    The Plaintiff Cannot Avoid the Tax Withholdings Because They Were Not Property of the Estate ...................................................................... 12

    E.    The Plaintiff Cannot Recover the Direct Tax Payments Because The Defendants Were Not Transferees ........................................................ 13

    F.    The Plaintiff Cannot Avoid the Preference Period Transfers ............... 15

        1.    The Complaint Does Not Plead that Tiffany Shade or the Trusts Were Insiders ............................................................... 15

        2.    The Transfer to Greenberg Family 2017 Irrevocable Trust No. 4 Was Not on Account of An Antecedent Debt........................... 17

        3.    Greg Greenberg, Amanda Greenberg, and Tiffany Shade Provided Subsequent New Value to the Debtor ..................................... 17

    G.    The Plaintiff Cannot Avoid the Transfers Because They Were Made for Reasonably Equivalent Value ............................................................. 20

    H.    The Complaint Does Not Plead the Existence of, or any Facts Supporting, Alleged Breach of Fiduciary Duties ..................................................... 23

    I.    The Complaint Does Not Meet the Heightened Pleading Standard Pursuant to Rule 9(b) ......................................................................... 25

CONCLUSION ................................................................................................ 26

i

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Ashcroft v. Iqbal*, <u>556 U.S. 662</u> (2009) ........................................................................1, 6

*BAA, PLC v. Acacia Mut. Life Ins. Co.*, <u>929 A.2d 1</u> (Md. 2007) ........................................9

*Beaman v. Barth (In re AmeriLink, Ltd.)*, No. 09-01055-8-JRL, <u>2011 WL 864953</u> (Bankr. E.D.N.C. Mar. 11, 2011) ........................................................................7

*Begier v. IRS*, <u>496 U.S. 53</u> (1990) ........................................................................12

*Butler v. David Shaw, Inc.*, <u>72 F.3d 437</u> (4th Cir. 1996) ........................................16

*Crumpton v. Stephens (In re Northlake Foods, Inc.)*, <u>715 F.3d 1251</u> (11th Cir. 2013) ................22

*Dobin v. Hill (In re Hill)*, <u>342 B.R. 183</u> (Bankr. D.N.J. 2006) ........................................15

*Englander v. Blunt (In re Essex Constr., LLC)*, <u>624 B.R. 103</u> (Bankr. D. Md. 2020) ..................13

*Fick v. Perpetual Title Co.*, <u>694 A.2d 138</u> (Md. Ct. Spec. App. 1997) ........................................10

*Field v. United States (In re Abatement Envtl. Res., Inc.)*, <u>102 F. App'x 272</u> (4th Cir. 2004) ........................................................................21

*French v. Liebmann (In re French)*, <u>440 F.3d 145</u> (4th Cir. 2006) ........................................13

*Froelich v. Erickson*, <u>96 F. Supp. 2d 507</u> (D. Md. 2000), *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, <u>5 F. App'x 287</u> (4th Cir. 2001) ........................................24

*Gold v. United States (In re Kenrob Info. Tech. Sols.)*, <u>474 B.R. 799</u> (Bankr. E.D. Va. 2012) ........................................................................22

*Graham v. Serafis (In re Vill. Red Rest. Corp.)*, <u>2021 Bankr. LEXIS 2377</u> (Bankr. S.D.N.Y. Aug. 31, 2021) ........................................................................21

*Hovis v. Ducate (In re Ducate)*, <u>369 B.R. 251</u> (Bankr. D.S.C. 2007) ........................................21

*Iannacone v. IRS (In re Bauer)*, <u>318 B.R. 697</u> (Bankr. D. Minn. 2005) ........................................13

*In re AstroPower Liquidating Trust*, <u>335 B.R. 309</u> (Bankr. D. Del. 2005) ........................................7

*In re Ballantyne Brands, LLC*, <u>656 B.R. 117</u> (Bankr. W.D.N.C. 2023) ........................................22

*In re Caremerica, Inc.*, <u>409 B.R. 737</u> (Bankr. E.D.N.C. 2009) ........................................7

*In re Dewey & LeBoeuf LLP*, <u>518 B.R. 766</u> (Bankr. S.D.N.Y. 2014) ........................................17

*In re Doctors Hosp. of Hyde Park, Inc.*, 507 B.R. 558 (Bankr. N.D. Ill. 2013) ...........................10

*In re EBC I, Inc.*, 380 B.R. 348 (Bankr. D. Del. 2008) ............................................................10

*In re JKJ Chevrolet, Inc.*, 412 F.3d 545 (4th Cir. 2005)........................................................18, 20

*In Re: Jones Truck Line, Inc.*, 130 F.3d 323 (8th Cir. 1997)........................................................18

*In re Nomus–North Carolina, Inc.*, No. 01-50373, 2004 WL 574510 (Bankr. M.D. N.C. 2004) ...................................................................................................................................18

*In re Operations NY LLC*, 490 B.R. 84 (Bankr. S.D.N.Y. 2013) ..............................................10

*In re PennySaver USA Publ'g, LLC*, 602 B.R. 256 (Bankr. D. Del. 2019) ................................8

*In re Persinger*, 545 B.R. 896 (Bankr. E.D.N.C. 2016) ..............................................................21

*In re Roti*, 271 B.R. 281 (Bankr. N.D. Ill. 2002) .........................................................................21

*Kann v. Kann*, 344 Md. 689, 690 A.2d 509 (1997) .....................................................................23

*Leibersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.)*, 280 B.R. 103 (Bankr. E.D. Pa. 2002).......................................................................................................................10

*Lyon v. Campbell*, 707 A.2d 850 (Md. Ct. Spec. App. 1998).......................................................23

*Lyon v. United States*, 68 F. App'x 461 (4th Cir. 2003) .............................................................12

*Mendiono v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008).....................................6

*Molovinsky v. Fair Emp. Council of Greater Washington, Inc.*, 839 A.2d 755 (Md. Ct. Spec. App. 2003) .....................................................................................................................................9

*Moody v. Security Pac, Business Credit*, 971 F.2d 1056 (3d Cir. 1992) ...................................10

*Plank v. Cherneski*, 469 Md. 548, 231 A.3d 436 (2020) ............................................................23

*Shulman v. Progressive Com. Cas. Co.*, No. CV DKC 19-1709, 2020 WL 758239 (D. Md. Feb. 14, 2020) .................................................................................................................................25

*Smith v. Litchford & Christopher, P.A. (In re Bay Vista of VA., Inc.)*, 428 B.R. 197 (Bankr. E.D. Va. 2010)........................................................................................................................................10

*Stone v. Trump*, 400 F. Supp.3d 317 (D. Md. 2019)....................................................................19

*Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298 (D. Md. 2000) .............25

*Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc.)*, 442 B.R. 852 (Bankr. S.D. Fla. 2010).................................................................................................................................8

iii

*United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157 (9th Cir. 2017) ........................7

*Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001) ......................................24

**FEDERAL STATUTES**

11 U.S.C. § 101(2)(A) ............................................................15

11 U.S.C. § 101(31)(B) ...........................................................15

11 U.S.C. § 101(31)(E) ...........................................................15

11 U.S.C. §§ 544(b)(2) ..........................................................4, 6

11 U.S.C. § 547(a)(2) ............................................................17

11 U.S.C. § 547(b)(2) ............................................................17

11 U.S.C. § 547(b)(3) .............................................................9

11 U.S.C. § 547(b)(4)(B) .........................................................15

11 U.S.C. § 547(f) ................................................................9

11 U.S.C. § 548(a)(1)(B)(i) ....................................................5, 21

11 U.S.C. § 548(a)(1)(B)(ii) ......................................................9

11 USC § 550 ..............................................................6, 13, 15

28 U.S.C. § 157(b) ................................................................4

28 U.S.C. § 1334 .................................................................4

28 U.S.C. §§ 1408, 1409 ..........................................................4

I.R.C. §§ 3102(a), 3402(a) .......................................................12

Fed. R. Bankr. P. 2004 ...........................................................4

Fed. R. Bankr. P. 7008 ...........................................................7

Fed. R. Bankr. P. 7009 ..........................................................25

Fed. R. Bankr. P. 7012 ...........................................................4

Fed. R. Civ. P. 8(a)(2) ..............................................4, 7, 8, 9, 26

Fed. R. Civ. P. 9(b) ...................................................4, 25, 26

52309511.11

Fed. R. Civ. P. 12(b)(6)..............................................................................4, 6

**STATE STATUTES**

Md. Code §§ 15-201 *et. seq.*................................................................6

Md. Code § 15-204 ...............................................................................9

Md. Code §§ 15-204, 205, 206 ...........................................................21

Md. Code § 15-205 ...............................................................................9

Md. Code § 15-206 ...............................................................................9

**OTHER AUTHORITIES**

2 Collier on Bankruptcy ¶ 101.45 (15th ed. Rev. 2006) .....................15

## PRELIMINARY STATEMENT[1]

The Complaint is full of legal conclusions and colorful adjectives and adverbs, but woefully short of facts that would plausibly suggest liability against the Defendants. It seeks to claw back prepetition payments, but does not specify the amount and date of the payments. It ignores the Plaintiff's obligation to allege facts relating to insolvency, blithely and conveniently concluding—with no discussion of real financial facts—that the Debtor was insolvent for the entire three-year period prepetition. It questions the use of the company's credit card, but makes no specific allegations of improper use.

Plaintiff must do more in order to sufficiently state a claim against the Defendants. The Federal Rules and case law under *Iqbal* and its progeny demand it. What is more, Plaintiff cannot claim—as many other trustees credibly can—that it is unable to allege specific facts because of lack of knowledge, and therefore the pleading standards should be softened. The Committee (represented by the same counsel as Plaintiff) conducted an extensive review of the relevant documents, with the Defendants consenting to the Committee's Rule 2004 examination and voluntarily producing over 2,500 documents. The Court should certainly take this into account in determining whether the Complaint plausibly states a claim against Defendants: the Plaintiff had plenty of documents and other materials to develop the facts regarding the potential claims against the Defendants, and the best that Plaintiff can come up with is a flimsy collection of legal conclusions and unsupported aspersions against the management and owners of the Debtor.

The Complaint should be denied with prejudice.

---

[1] Any capitalized term not otherwise defined herein shall have the same meaning as that ascribed to it elsewhere in this Brief.

52309511.11

## INTRODUCTION AND SUMMARY OF ARGUMENT

The ESCO, Ltd. Liquidating Trust ("Plaintiff"), the liquidating trust established in the bankruptcy of debtor ESCO Ltd. (the "Debtor"), filed the complaint in the instant case (the "Complaint") against Defendants Greg Greenberg, Theodore Greenberg, Beth Greenberg, Greenberg Family 2012 Irrevocable Trust No. 1, Greenberg Family 2012 Irrevocable Trust No. 2, Greenberg Family 2012 Irrevocable Trust No. 3, Greenberg Family 2017 Irrevocable Trust No. 4 (incorrectly named in the Complaint as Greenberg Family 2012 Irrevocable Trust No. 4), Greenberg Family 2017 Irrevocable Trust No. 5 (incorrectly named in the Complaint as Greenberg Family 2012 Irrevocable Trust No. 5), Amanda Greenberg, and Tiffany Shade (the "Defendants") seeking to avoid alleged preferential or constructively fraudulent transfers, and bringing additional claims for breach of fiduciary duty and intentional fraud against the Debtor's former top officers.

The Complaint does not identify the date or amount of most challenged transfers, and therefore does not sufficiently allege a claim to avoid such transfers.  It includes no exhibits, such as those that normally accompany an avoidance action complaint, providing facts relating to the nature of the debt paid, the date of payment, and the amount of payment.  It generally repeats the statutory elements (e.g., simply repeating the elements of section 547 of the Bankruptcy Code, but framing them as conclusions) without supporting facts, and alleges that some of the challenged transfers might (or might not) be made without reasonably equivalent value, or on account of an antecedent debt.  The Complaint should be dismissed on this basis alone, since it does not fairly apprise the Defendants of what is actually being challenged.

Plaintiff's avoidance action claims fail on multiple, independent levels.  For most of the avoidance action claims, it is Plaintiff's burden to allege facts plausibly suggesting insolvency at the time of the transfer.  However, the Complaint neglects to plead the Debtor's insolvency or other financial distress, so all avoidance claims are ill-pled.  It seeks to avoid and recover tax

2

withholdings that—as a matter of law—were not estate property, or payments made directly to taxing authorities where the Defendants were not transferees; these portions of the Complaint must be dismissed with prejudice.  The Complaint seeks to avoid as a preference an equity distribution payment not made on account of an antecedent debt.  This claim must also be dismissed with prejudice.  The Complaint does not plausibly plead the insider status of certain Defendants, so—as a matter of law—the applicable preference period must be limited to ninety days prepetition (rather than one year).

The Complaint seeks to avoid salary payments to Greg Greenberg, Amanda Greenberg, and Tiffany Shade as preferences or constructively fraudulent transfers, but does not attempt to rebut the presumption that the value of an employee's compensation is equal to the value of the services provided.  In addition to failing on that prima facie issue, the Complaint ignores the defenses that are clear from the face of the Complaint: the subsequent new value and reasonably equivalent value provided by these Defendants' services.  Accordingly, the avoidance claims against Greg Greenberg, Amanda Greenberg, and Tiffany Shade must be dismissed.

The Complaint does not identify how Greg Greenberg or Theodore Greenberg allegedly breached their fiduciary duties in approving compensation, and cannot overcome the business judgment rule.  The Plaintiff cannot plausibly state a claim for breach of fiduciary without specifying the facts underlying this legal conclusion.  In other words, Plaintiff cannot merely conclude "breach of fiduciary duty" and have it stick.  This claim is ill-pled and must be dismissed.

The Complaint alleges intentional fraud against the Debtor's former president, but does not plead the time, contents, or recipient of his allegedly fraudulent statements.  This does not meet the heightened pleading standard for intentional fraud.

In sum, the Complaint is a nonspecific set of legal conclusions that does not state a claim or put the Defendants on notice of the facts supporting claims against them.  It must be dismissed entirely with prejudice.

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are 11 U.S.C. §§ 544, 547, 548, 550, Fed. R. Bankr. P. 7008, 7009, 7012 and Fed. R. Civ. P. 8, 9, 12.

Pursuant to Rule 7012-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, Defendants do not consent to the entry of a final order by the Court in connection with this Motion, if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

On March 31, 2023 (the "Petition Date"), ESCO filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

During the pendency of this case, the Official Committee of Unsecured Creditors moved pursuant to Fed. R. Bankr. P. 2004 to obtain documents from certain Defendants, primarily Greg Greenberg.  (Bkr. D.I. 307).  The Defendants did not oppose the motion and consented to the requested relief.  (Bkr. D.I. 314).  Greg Greenberg produced thousands of documents to the Official Committee of Unsecured Creditors – which was represented by the same counsel as the Plaintiff. Counsel for the Official Committee of Unsecured Creditors never raised any issues or suggested

Greg Greenberg did not comply with his production responsibilities.  None of those documents are included as exhibits to the Complaint.

On November 16, 2023, the Court confirmed the Debtor's plan of liquidation, which established the Plaintiff and vested the Plaintiff with the right to pursue the Debtor's and the estate's causes of action.  (Bkr. D.I. 389).

The Plaintiff filed the Complaint on May 20, 2024, commencing the instant adversary proceeding.  By agreement between the Defendants and the Plaintiff, the Defendants' time to respond to the Complaint was set for July 22, 2024, and later extended to July 29, 2024.

## SUMMARY OF COMPLAINT

The Complaint primarily seeks to avoid and recover transfers made to the Defendants.  The Complaint does not include a list of most of the transfers it seeks to avoid, or when those transfers were made.  It merely alleges that,

> during the three years before the Petition Date (the "Transfer Period") and one year before the Petition Date (the "Preference Period"), the Debtor was insolvent yet made avoidable transfers to the insider Defendants in the form of equity distributions, compensation, and reimbursements for credit card expenses (each a "Transfer," and together the "Transfers"). These Transfers to the insider Defendants total nearly $9 million.

Compl. ¶ 35.

The Complaint brings six counts against the Defendants:

**Count I** seeks to avoid as preferences under Bankruptcy Code Section 547 any of these Transfers that occurred between March 31, 2022 and the bankruptcy filing date of March 31, 2023. This claim is apparently brought against all Defendants.

**Count II** seeks to avoid Transfers as constructively fraudulent under Bankruptcy Code Section 548(a)(1)(B).  This claim is apparently brought against all Defendants and seeks recovery of all Transfers made since March 31, 2021.

**Count III** seeks to avoid these transfers under the Maryland Uniform Fraudulent Transfer Act ("MUFCA"), Md. Code §§ 15-204 *et. seq*., made applicable by Bankruptcy Code Section 544(b)(2).  This claim is apparently brought against all Defendants and seeks recovery of all Transfers made since March 31, 2020.

**Count IV** seeks recovery of the amounts of the Transfers avoided by Counts I-III pursuant to Bankruptcy Code Section 550, and is brought against all Defendants.

**Count V** is brought against Greg and Theodore Greenberg.  It seeks an unliquidated recovery on account of alleged fiduciary breaches by Greg and Theodore Greenberg.

**Count VI** is brought only against Greg Greenberg.  It seeks an unliquidated amount on account of alleged intentional fraud for Greg Greenberg's use of the company credit card for personal expenses.

## ARGUMENT

### A.    Motion to Dismiss Standard

Under Federal Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  Dismissal is appropriate where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiono v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. Proc. 8(a)(2)).

In evaluating this Motion, the Court may look not only to the Complaint, but also to matters of public record, such as documents filed in the Debtor's chapter 11 proceeding. *See United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1171 (9th Cir. 2017) (holding that trial court may properly consider prior court proceedings before that trial court in a motion to dismiss).

### B.   The Complaint is Inadequately Pled Pursuant to Rule 8

Pursuant to Fed. R. Civ. P. 8(a)(2), applicable pursuant to Fed. R. Bankr. P. 7008, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

The Complaint is largely one for avoidance of the Transfers. A complaint merely alleging that a debtor made transfers is insufficient to plead an avoidance claim. *In re Caremerica, Inc.*, 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009) (preference claim dismissed because complaint's unsupported "assertion that "the debtors transferred its (sic) funds into bank accounts operated by the debtors' principals" is merely a conclusory statement that lacks factual support."). Other courts have given guidance on when a complaint sufficiently pleads facts supporting a preference claim. *Beaman v. Barth (In re AmeriLink, Ltd.)*, No. 09-01055-8-JRL, 2011 WL 864953, at *2 (Bankr. E.D.N.C. Mar. 11, 2011) ("To comply with the heightened pleading standards for § 547 claims, the complaint must include (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preferential transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) amount of the transfer.").

The purpose of the Fed. R. Civ. P. 8(a)(2) pleading standard is "to apprise the defendant fairly of the charges made against him." *In re AstroPower Liquidating Trust*, 335 B.R. 309, 333 (Bankr. D. Del. 2005).

At the very least, an avoidance complaint must identify "who transferred what to whom and when," because only that level of specificity will permit a defendant "to mount whatever

defenses may be available." *Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc.)*, 442 B.R. 852, 855–56 (Bankr. S.D. Fla. 2010). "[C]omplaints that identify the dates, amounts, source, and transferee of each of the alleged transfers successfully support claims of constructive fraudulent transfer under Fed. R. Civ. Pro. 8(a)(2)'s pleading standard." *In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, 266 (Bankr. D. Del. 2019).

The Complaint attempts to challenge Transfers made at unspecified times in unspecified amounts. In the "Claims for Relief" section laying out the counts in the Complaint, the Plaintiff seeks to avoid alleged constructively fraudulent transfers if they were made during the relevant lookback period and "were not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received." Compl. ¶¶ 56, 60. This is not an allegation of facts that must be taken a true, it is an allegation that if certain facts are true the Plaintiff might state a claim. This kind of hedging, conditional statement cannot adequately allege facts supporting a claim.

The Complaint refers to the Debtor's records but attaches none of them. The Debtor's Statement of Financial Affairs (the "SOFA") discloses transactions to certain Defendants during the year prepetition. (Bkr. D.I. 149). A true and correct copy of the SOFA is attached hereto as **Exhibit A**, and may be judicially noticed by the Court in consideration of this Motion. The SOFA demonstrates the inadequacy of the Complaint: the salary history shows dozens of transfers to various Defendants over a one-year period that are described as "Gross Salary," including amounts withheld for taxes and not received by any Defendant. *See* Ex. A at 32-35. From the allegations in the Complaint, the Defendants cannot determine with certainty which transactions are being challenged, and whether the Plaintiff seeks to recover the gross amount (including amounts withheld for taxes), or only the net amount.

The Complaint essentially amounts to a statement that, if certain unpled facts are true, Plaintiff can recover some amount transferred during some time period.  This indistinct pleading is insufficient under Fed. R. Civ. P. 8, and must be dismissed entirely.

### C.    The Plaintiff Did Not Plead the Debtor's Insolvency

The avoidance causes of action in Counts I, II and III all require the Plaintiff to plead at least one of three financial distress criteria:

- Book-value insolvency, meaning debts exceeding assets (11 U.S.C. § 547(b)(3); 11 U.S.C. § 548(a)(1)(B)(ii)(I); Md. Code § 15-204);
- Inadequate capitalization (11 U.S.C. § 548(a)(1)(B)(ii)(II); Md. Code § 15-205); or
- Intent to incur debts beyond the debtor's ability to repay (11 U.S.C. § 548(a)(1)(B)(ii)(III); Md. Code § 15-206).

Insolvency is presumed under Section 547 for the 90 days prepetition.  11 U.S.C. § 547(f). The Plaintiff seeks to avoid alleged preference to insiders up to a year prepetition.  The Plaintiff does not have a presumption of insolvency for the period from 365 to 91 days prepetition (the "Insider Lookback Period").

To assess insolvency, courts compare a debtor's assets and liabilities in a straightforward book-value calculation.  *Molovinsky v. Fair Emp. Council of Greater Washington, Inc.*, 839 A.2d 755, 766 (Md. Ct. Spec. App. 2003) *citing F.S. Bowen Elec. Co. v. United States Fid. & Guar. Co.*, 256 F.2d 46, 49 (4th Cir. 1958) (stating that the "[d]etermination of the issue of solvency ... requires an appraisal of probable liabilities as well as the salable value of assets").  "[W]here a business is a 'going concern,' considering goodwill in a solvency analysis seems highly appropriate."  *BAA, PLC v. Acacia Mut. Life Ins. Co.*, 929 A.2d 1, 19 (Md. 2007) *citing* Md. Code § 15-202(a).

"To determine whether a debtor is undercapitalized (or retains unreasonably small assets), courts look to whether the debtor has an 'inability to generate sufficient profits to sustain

operations ....'" *Smith v. Litchford & Christopher, P.A. (In re Bay Vista of VA., Inc.)*, <u>428 B.R. 197, 225</u> (Bankr. E.D. Va. 2010). "Among the relevant data are cash flow, net sales, gross profit margins, and net profits and losses." *Moody v. Security Pac, Business Credit*, <u>971 F.2d 1056, 1073</u> (3d Cir. 1992).

Intent to incur debts beyond the ability to repay is shown by an analysis of the subjective intent of the debtor when making the transfer. *Leibersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.)*, <u>280 B.R. 103, 116</u>–17 (Bankr. E.D. Pa. 2002); *see also In re Operations NY LLC*, <u>490 B.R. 84, 98</u> (Bankr. S.D.N.Y. 2013) (under the Bankruptcy Code); *Fick v. Perpetual Title Co.*, <u>694 A.2d 138, 149</u> (Md. Ct. Spec. App. 1997) (affirming denial of plaintiff's summary judgment motion under MUFCA "because we do not know the extent of [debtor's] assets or liabilities at any relevant point in time, we cannot infer what [debtor] intended or believed prior to making any transfer."). This element is established if "the debtor could not have reasonably believed that it would be able to pay its debts as they matured." *In re Doctors Hosp. of Hyde Park, Inc.*, <u>507 B.R. 558, 635</u>–36 (Bankr. N.D. Ill. 2013) *citing Barrett v. Continental Ill. Nat'l Bank & Trust Co.*, <u>882 F.2d 1</u> (1st Cir. 1989), *cert. denied*, <u>494 U.S. 1028</u> (1990); *see also In re EBC I, Inc.*, <u>380 B.R. 348, 359</u> (Bankr. D. Del. 2008).

These financial distress criteria cannot be assumed just because a debtor in is bankruptcy; each requires at least some level of factual support. The Complaint does not adequately plead any of these financial distress criteria. It formulaically recites the statutory elements without elaboration. Compl. ¶¶ 4, 52, 55, 60. This is insufficient to plead these essential elements of the avoidance claims.

The Complaint contains only one other relevant allegation, a footnote that alleges that the "Debtor incurred operating losses of approximately $280,000 and $1.76 million in fiscal years

2020 and 2021, respectively, which had a significant negative impact on the Debtor's financial position and liquidity." Compl. at ¶ 35 & n.11. This allegation does not provide any factual support for alleged financial distress in 2022 or 2023, and cannot support a finding of insolvency during those fiscal years.

The existence of net operating losses is irrelevant to the calculation of book-value insolvency; it says nothing about the Debtor's assets or liabilities except to show a potentially-valuable tax attribute: deductible net operating losses. In fact, the Debtor's schedules show that on the Petition Date its assets were $15,878,355.41 and its liabilities were $16,055,635.73. (Bkr. D.I. 148 at 10). At the most acute moment of the Debtor's financial struggles, and after paying a number of professionals in preparation for the bankruptcy, the Debtor was only book value insolvent by approximately $177,000.00. For comparison, the Debtor's gross revenue for the year prepetition exceeded $35 million. Ex. A at 10. It is implausible to suggest the Debtor was insolvent for a substantial period of time before the Petition Date; the judicially noticeable facts suggest that the Debtor only tipped into book value insolvency mere weeks before the Petition Date.

The existence of net operating losses is merely one fact that could potentially support a finding of insufficient capitalization, but is insufficient on its own. The Complaint pleads no other facts regarding inadequate capitalization.

The existence of net operating losses in 2020 and 2021 does not demonstrate the amount of the Debtor's debts at those times, or the Debtor's intent in incurring debts at those times. Many companies generate net operating losses and are subsequently able to repay their debts; the Complaint does not even attempt to address the other facts necessary to establish that the Debtor intentionally incurred debts beyond its ability to repay. The SOFA indicates that in the 2020 and

11

2021 fiscal years, the Debtor had gross revenue exceeding $63 million and $55 million, respectively.  Ex. A at 10.  Compared to the overall size of the business, the reported net operating losses are comparatively small and do not plausibly indicate an unbearable debt load.

The Complaint does not even bother to address alleged inadequate capitalization.  The Complaint contains no facts regarding the Debtor's intent in incurring debts, the amount of those debts, the amount of the Debtor's assets, the Debtor's cash flows, net sales, or profit margins for any period.

The Complaint does not plead the Debtor's insolvency, inadequate capitalization or intent to incur debts beyond its ability to repay.  Count I must be dismissed as to all Transfers during the Insider Lookback Period.  Counts II and III must be dismissed entirely.

> **D.      The Plaintiff Cannot Avoid the Tax Withholdings Because They Were Not Property of the Estate**

The avoidance causes of action in Counts I, II and III all require the Plaintiff to plead a transfer of some property of the debtor.

"The Internal Revenue Code requires employers to withhold federal social security, hospital insurance, and income taxes from the wages of their employees and to turn over the withheld amounts to the United States.  *See* I.R.C. §§ 3102(a), 3402(a). The withheld taxes constitute a special fund held in trust for the benefit of the United States." *Lyon v. United States*, 68 F. App'x 461, 466 (4th Cir. 2003).  A debtor's "payments of trust-fund taxes to the IRS from its general accounts were not transfers of 'property of the debtor,' but were instead transfers of property held in trust for the Government pursuant to [Internal Revenue Code] § 7501.  Such payments therefore cannot be avoided as preferences." *Begier v. IRS*, 496 U.S. 53, 67 (1990). This principle applies to Section 544 and 548 as well – both require a transfer of an "interest of

the debtor in property," and amounts in trust are not debtor property. *French v. Liebmann (In re French)*, 440 F.3d 145, 151 (4th Cir. 2006) (*Begier's* principles apply to Section 548 actions).

The Complaint identifies "approximately $6 million" in compensation paid to Greg Greenberg, Amanda Greenberg and Tiffany Shade that the Plaintiff seeks to avoid. This approximate number is the gross compensation, not reduced by trust fund tax withholdings. As such, the Complaint seeks to avoid amounts that were withheld for taxes that were not property of the Debtor. The Complaint must be dismissed with prejudice as to any amounts withheld for taxes.

### E.    The Plaintiff Cannot Recover the Direct Tax Payments Because The Defendants Were Not Transferees

Pursuant to Section 550 of the Bankruptcy Code, "the trustee may recover, for the benefit of the estate, the property transferred … from (1) the initial *transferee* of such transfer…" 11 USC § 550(a)(1) (emphasis added). The Defendants are not transferees of the alleged "distributions" to equity holders that were actually direct payments to taxing authorities.

"When a debtor pays a creditor to satisfy a debt guaranteed by a third party, the creditor is the initial transferee and the guarantor, who is no longer liable for the debt, is the entity for whose benefit the transfer is made." *Englander v. Blunt (In re Essex Constr., LLC)*, 624 B.R. 103, 130 (Bankr. D. Md. 2020) *citing Lowry v. Security Pacific Business Credit, Inc. (In re Columbia Data Products, Inc.)*, 892 F.2d 26, 29 (4th Cir. 1989). Where a debtor directs that money be withheld from a distribution and paid to a taxing authority, the taxing authority, not the distributee, is the initial transferee of the funds. *Iannacone v. IRS (In re Bauer)*, 318 B.R. 697, 702 (Bankr. D. Minn. 2005).

The Debtor was a pass-through entity for tax purposes; its tax liability was passed to the equity owner Defendants. The Debtor then paid the passed-through tax liability directly to the applicable taxing authority.

13

The Complaint alleges that the Plaintiff has "identified $1,859,860 in distributions to the equity holder insider Defendants." Compl. at ¶ 39. The Complaint then includes a chart clearly describing most of these payments as tax payments, not equity distributions. *Id.* The following distributions (the "Direct Tax Payments") totaling $1,717,824.00 were tax payments paid directly to the applicable taxing authorities:

| Month Paid | Description | Amount |
|---|---|---|
| July 2020 | VA Tax Payment - 2019 Form VA8879 - Greg | $187.00 |
| July 2020 | MD Tax Payment - 2019 Form MD502 – Greg | $68,677.00 |
| July 2020 | IRS 2019 Extension – Ted | $450,000.00 |
| July 2020 | IRS 2019 Extension – Greg | $383,276.00 |
| July 2020 | IRS 2019 Trust #4 | $48,848.00 |
| August 2020 | IRS Trust #4 Estimated 2020 payment #1 & #2 | $17,500.00 |
| September 2020 | IRS Trust #4 Estimated 2020 payment #3 | $8,750.00 |
| December 2020 | 2020 Form 1040-ES – Ted | $175,000.00 |
| December 2020 | 2020 Form 1040-ES – Greg | $170,000.00 |
| May 2021 | IRS 2020 Form 4868 – Ted | $10,000.00 |
| May 2021 | IRS 2020 Form 4868 – Greg | $52,000.00 |
| June 2021 | 2021 Form 1040 ES - Ted Q2 | $107,500.00 |
| June 2021 | 2021 Form 1040 ES - Greg Q2 | $55,000.00 |
| September 2021 | 1040 ES Q3 2021 – Greg | $27,500.00 |
| September 2021 | 1040 ES Q3 2021 - Trust #4 | $4,186.00 |
| September 2021 | 1040 ES Q3 2021 – Ted | $53,750.00 |

14

| Month Paid | Description | Amount |
|---|---|---|
| January 2022 | 1040 ES Q3 2021 – Greg | $27,500.00 |
| January 2022 | 1040 ES Q3 2021 - Trust #4 | $4,400.00 |
| January 2022 | 1040 ES Q3 2021 – Ted | $53,750.00 |

The Defendants were not the transferees of the Direct Tax Payments, the applicable taxing authorities were.  The Plaintiff cannot recover the Direct Tax Payments from the Defendants, and Count IV seeking recovery of the Direct Tax Payments pursuant to 11 U.S.C. § 550 must be dismissed with prejudice.

### F.    The Plaintiff Cannot Avoid the Preference Period Transfers

### 1.    The Complaint Does Not Plead that Tiffany Shade or the Trusts Were Insiders

The Complaint seeks to avoid Transfers made up to one year prepetition as preferences. The Plaintiff may not avoid Transfers made during the 90 days prepetition unless the Complaint adequately pleads that each Defendant is an insider.  11 U.S.C. § 547(b)(4)(B) (one-year lookback period for transfers to insiders).

An insider of a corporation includes the directors and officers of a debtor, persons in control of a debtor or relatives thereof.  11 U.S.C. § 101(31)(B).  "A former spouse, however, is not related by affinity, and therefore 'a former spouse will not be considered a relative.'" *Dobin v. Hill (In re Hill)*, 342 B.R. 183, 199 (Bankr. D.N.J. 2006) *quoting* 2 Collier on Bankruptcy ¶ 101.45 (15th ed. Rev. 2006).

Insiders also include affiliates of the debtor.  11 U.S.C. § 101(31)(E).  An affiliate is, in relevant part, an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor."  11 U.S.C. § 101(2)(A).

15

Outside these statutory categories, a non-statutory insider "must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996) *quoting Hunter v. Babcock (In re Babcock Dairy Co.)*, 70 B.R. 662, 666 (Bankr. N.D. Ohio 1986).

The Complaint alleges that Tiffany Shade "is the ex-wife of Brad Greenberg (the deceased son of Theodore and deceased brother of Greg and Amanda)." Compl. ¶ 29.   As a former spouse of a family member of a director or officer she is not a relative of any of the Debtor's officers or controllers, and is not an insider.

The Complaint alleges that Greenberg Family 2012 Irrevocable Trust No. 1, Greenberg Family 2012 Irrevocable Trust No. 2, Greenberg Family 2012 Irrevocable Trust No. 3, Greenberg Family 2012 Irrevocable Trust No. 4, and Greenberg Family 2012 Irrevocable Trust No. 5 (collectively, the "Trusts") were equity holders of the Debtor.  Compl. ¶¶ 23-27.  Mere equity ownership does not make the Trusts statutory insiders, and the Complaint does not plead any facts regarding the Trusts' voting rights or ownership percentages.

The Complaint includes no allegations that Tiffany Shade or the Trusts had any authority to dictate corporate decision-making or asset disposition.  It includes no allegations that Tiffany Shade or the Trusts ever attempted to assert or exercise such authority.  The Complaint does not plead any facts that would establish non-statutory insider status.

Because the Complaint does not plead that Tiffany Shade and the Trusts are insiders of the Debtor, all claims against them for Transfers during the Insider Lookback Period must be dismissed.

2.    **The Transfer to Greenberg Family 2017 Irrevocable Trust No. 4 Was Not on Account of An Antecedent Debt**

A transfer may only be avoided as a preference if it is made "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2).

The Bankruptcy Code recognizes the distinction between debts – amounts owed by the debtor – and interests – which give the holder some form of ownership in the debtor.

Distributions to equity are generally made on account of the interest holder's ownership rights, not on account of pre-existing obligations. As a result, "[e]quity distributions are not ordinarily considered transfers made on account of an antecedent debt." *In re Dewey & LeBoeuf LLP*, 518 B.R. 766, 789 (Bankr. S.D.N.Y. 2014).

The April 2022 Transfer of $90,523.00 to Greenberg Family 2017 Irrevocable Trust No. 4 is identified in the Complaint as a "distribution to the equity holder." Compl. ¶ 39. The Complaint identifies no pre-existing obligation of the Debtor to make that distribution. Taking the Complaint on its face, this Transfer was made on account of Greenberg Family 2017 Irrevocable Trust No. 4's ownership interest in the Debtor and cannot be avoided as a preference. This claim must be dismissed as to Greenberg Family 2017 Irrevocable Trust No. 4 with prejudice.

3.    **Greg Greenberg, Amanda Greenberg, and Tiffany Shade Provided Subsequent New Value to the Debtor**

A transfer cannot be avoided as a preference to the extent that the transferee provided "subsequent new value," defined as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2). Because Greg Greenberg, Amanda Greenberg, and Tiffany

Shade (the "Employee Defendants") provided subsequent new value, their compensation cannot be avoided.

The value of services provided by an employee is rebuttably presumed to be equal to their compensation. *In Re: Jones Truck Line, Inc.*, 130 F.3d 323, 328 (8th Cir. 1997) ("Absent contrary evidence, the value of employee services is presumed to equal the wages and benefits the employer contracted to pay"); *In re Nomus–North Carolina, Inc.*, No. 01-50373, 2004 WL 574510 (Bankr. M.D. N.C. 2004) ("Value of an employee['s] services is presumed to equal wages and benefits that an employer contracted to pay.")

In the Fourth Circuit, any new value provided after an alleged preferential transfer reduces the transferee's preference liability if that new value is paid for via an avoidable transfer. *In re JKJ Chevrolet, Inc.*, 412 F.3d 545, 552 (4th Cir. 2005) (adopting the "subsequent advance" theory and rejecting the idea that Section 547(c)(4) requires new value to remain unpaid because "the proper inquiry is whether the new value has been paid for by an 'otherwise unavoidable transfer'").

After the first allegedly-avoidable transfer was made to Greg Greenberg, he continued to provide the management and day-to-day operations services though the petition date. Compl. ¶ 20. He is entitled to a presumption that his services were equal to the wages and benefits he was paid by the Debtor. The Complaint does not include specific facts to rebut this presumption; it baldly states his salary "exceeded the market rate" but does not even describe the responsibilities of Greg Greenberg's role. Compl. ¶ 42.

The Complaint does not rebut the presumption of value for services as to Amanda Greenberg either. The Complaint does not plead her job title or the services she was supposed to perform. Instead it merely alleges that "she appeared to do no work." Compl. ¶ 43. This is another conditional statement – it does not actually plead that Amanda did no work. The Complaint's

other allegations are similarly irrelevant: she allegedly did not send any emails after 2011, but the Complaint does not indicate whether she had a company email, used her personal email for responses or even received company-related emails since 2011.  Compl. ¶ 43.  Lastly, the Complaint alleges that Amanda lives in Florida where the Debtor has no offices.  Compl. ¶ 43.  The recent prevalence of remote work demonstrates how this allegation is irrelevant to whether Amanda Greenberg performed services, and remote work has been available for many business jobs for decades.

The Complaint does not rebut the presumption of value for services as to Tiffany Shade either.  Instead, it pleads the only allegations regarding Tiffany Shade's services "upon information and belief."  Compl. ¶ 44.  "[B]ecause a complaint must plausibly state a claim, using 'upon information and belief' as a pleading device survives a motion to dismiss only where 'the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'"  *Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) *quoting Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014) *quoting Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  The Plaintiff is a post-confirmation trust created by the Debtor's plan, represented by the same counsel as the Official Committee of Unsecured Creditors that preceded it.  There has been no barrier preventing the Plaintiff from obtaining the necessary facts to make well-pled allegations against Tiffany Shade.  The Plaintiff has access to the Debtor's books and records, summary material prepared before and during the bankruptcy, and copious documents and emails obtained from the Defendants.  Tiffany Shade is not withholding her job title or job responsibilities; the Plaintiff has simply failed to investigate them.  The Complaint's allegations on information and

belief must be disregarded.  Without those allegations, there are no facts to rebut the presumption that Tiffany Shade provided services equal in value to her salary.

Pursuant to *JKJ Chevrolet*, each pay period the Employee Defendants "subsequently advanced" additional services to the Debtor that were worth the amount of their compensation for that pay period.  With each pay period, the potential preference liability from the earlier transfer was satisfied by the subsequent, allegedly-preferential transfer.  The end result of this analysis is that, at most, the Plaintiff could recover the last prepetition Transfer as a preference.

In fact, Greg Greenberg's salary history shows that he continued to provide services, but did not receive compensation between June 17, 2022 and October 21, 2022.  Ex. A at 33.  This spans eight (8) bi-weekly pay periods where Greg Greenberg provided subsequent new value that reduces any preference liability for earlier transfers.  At the usual salary, this represents $259,938.48 in subsequent new value.

Payments to the Employee Defendants were made bi-weekly on account of work done two weeks before.  In the two pay periods leading up to the Petition Date, Greg Greenberg did not receive payment for his services at all.  Ex. A at 8.  Similarly, Amanda Greenberg and Tiffany Shade did not receive payment for their last period worked.  Ex. A at 8-9.  The subsequent new value provided by these unpaid final pay periods eliminates any remaining preference liability.  Per the facts alleged in the Complaint and the salary history in the SOFA, this claim must be dismissed as against the Employee Defendants.

G.     **The Plaintiff Cannot Avoid the Transfers Because They Were Made for Reasonably Equivalent Value**

To avoid salary payments as constructively fraudulent transfers, the Plaintiff must show that they were paid without receiving reasonably equivalent value in exchange, or without fair

consideration. 11 U.S.C. § 548(a)(1)(B)(i) (reasonably equivalent value); Md. Code §§ 15-204, 205, 206 (fair consideration). These concepts involve the same basic analysis.

The Plaintiff must affirmatively show a lack of fair consideration or reasonably equivalent value. *Field v. United States (In re Abatement Envtl. Res., Inc.)*, 102 F. App'x 272, 277 (4th Cir. 2004) (plaintiff must demonstrate lack of fair consideration); *Hovis v. Ducate (In re Ducate)*, 369 B.R. 251, 262 (Bankr. D.S.C. 2007) (Plaintiff's burden to show lack of reasonably equivalent value, and "This burden of proof never shifts.").

The date for defining reasonable equivalence of value is the date of the transfer. *In re Persinger*, 545 B.R. 896, 903 (Bankr. E.D.N.C. 2016). While there is no precise formula for determining reasonable equivalence, an important element of this consideration is fair market value. *In re Roti*, 271 B.R. 281, 295 (Bankr. N.D. Ill. 2002).

"Services provided in return for salary payments are presumed to constitute 'fair consideration' and 'reasonably equivalent value'" unless clearly excessive given the employee's responsibilities. *Graham v. Serafis (In re Vill. Red Rest. Corp.)*, 2021 Bankr. LEXIS 2377, at *22 (Bankr. S.D.N.Y. Aug. 31, 2021).

As one court elaborated,

> Generally, payments of salary are presumed to have been made for fair consideration. *In re TC Liquidations LLC*, 463 B.R. at 268. This rebuttable presumption makes for 'tough sledding' by bankruptcy trustees inclined to attack employee compensation as fraudulent transfers. For a trustee to succeed, he must either establish that 1) the compensation payments were made in bad faith (i.e., were actual fraudulent conveyances under 548(a)(1)(A)) or else 2) the compensation was excessive in light of the Defendants' employment responsibilities (i.e., a constructive fraudulent conveyance under 548(a)(1)(B)). *Id.*; see also *In re S. Textile Knitters*, 65 F. App'x. 426, 437 (4th Cir.2003); *Cilco Cement Corp. v. White*, 55 A.D.2d 668, 668, 390 N.Y.S.2d 178 (2d Dep't 1976) (salary paid to the president of the company was not a fraudulent conveyance because there was "no evidence that his salary was either excessive or unreasonable, or that the corporation did not receive full value in return."); *Mills v. Everest Reinsurance Co.*, 410 F.Supp.2d 243, 254 (S.D.N.Y. 2006).

21

*In re Ballantyne Brands, LLC*, 656 B.R. 117, 139–40 (Bankr. W.D.N.C. 2023).

An S corporation's payment of tax liabilities passed through to owners is reasonably equivalent value if the company is obligated to provide for tax disbursements. *Crumpton v. Stephens (In re Northlake Foods, Inc.)*, 715 F.3d 1251, 1256 (11th Cir. 2013) (transferee was entitled to judgment on the pleading for constructive fraudulent transfer claim because agreement by debtor to pay passed-through tax liability in exchange for S corporation status "provides [the debtor] with valuable benefits by virtue of its S-corporation election"); *Gold v. United States (In re Kenrob Info. Tech. Sols.)*, 474 B.R. 799, 803 (Bankr. E.D. Va. 2012) (unwritten "agreement between the shareholders and the corporation [to elect S corporation tax status] was valuable consideration to the corporation where the tax payments on behalf of the shareholders represented no more than the pass-through tax liability").

As discussed above, the Direct Tax Payments were payments to taxing authorities made by the Debtor on account of passed-through tax liability. If the Debtor had not been a pass-through tax entity and had not made the Direct Tax Payments on behalf of the applicable Defendants, the Debtor would have been obligated to make those tax payments at the entity level anyway. Although the Direct Tax Payments are not avoidable for reasons discussed above, they also provided reasonably equivalent value and fair consideration to the Debtor.

As for other compensation payments to Greg Greenberg, the Complaint does not identify which payments it seeks to avoid or how much it seeks to recover. It generally alleges that some of the Transfers were made on account of inflated salary. As discussed above, this is insufficient to state a claim.

It is also insufficient to rebut the presumption that Greg Greenberg's compensation was reasonably equivalent or fair consideration for his services. The Complaint pleads that Greg

Greenberg "ran the Debtor's day-to-day business" during the entire relevant period.  Compl. ¶ 20.

The Complaint does not plead anything about his job responsibilities, or any other facts substantiating the alleged inflation of his compensation.  The Complaint does not plead anything about the size or complexity of the Debtor's business, how similarly-situated officers at other companies were compensated or how Greg Greenberg's compensation was determined.  The Complaint pleads that his compensation exceeded that of his predecessor, but omits any mention of when Greg Greenberg took over from his predecessor.[2]  The Complaint does not rebut the presumption that compensation is reasonably equivalent and given for fair consideration.  Counts II and III must be dismissed as to Greg Greenberg.

> **H.  The Complaint Does Not Plead the Existence of, or any Facts Supporting, Alleged Breach of Fiduciary Duties**

Under Maryland law, "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries."  *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521 (1997).  To state a claim for fiduciary breach, the Plaintiff must show "(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary."  *Plank v. Cherneski*, 469 Md. 548, 599, 231 A.3d 436, 466 (2020) *quoting Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 (D. Md. 2000), *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, 5 F. App'x 287 (4th Cir. 2001).

The Complaint does not identify the fiduciary duties allegedly breached.  It formulaically pleads that Greg and Theodore Greenberg breached "fiduciary duties of care and loyalty."  Compl. ¶ 67.  A breach of the duty of loyalty arises under Maryland law when a corporate officer prefers himself to the corporation, generally by appropriating a business opportunity.  *Lyon v. Campbell*, 707 A.2d 850, 864 (Md. Ct. Spec. App. 1998).  Likewise, a breach of the duty of care arises from

---

[2]    Greg Greenberg assumed his current role in 2013.

an allegation that the fiduciary made an unjustifiable decision to the detriment of the corporation. *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001) ("[D]irectors are required to perform their duties in good faith, in a manner they reasonably believe to be in the best interest of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances."). Corporate decision making is protected by the business judgment rule, and a court will impose liability for a "decision only if the challenger produces evidence establishing that the directors acted in bad faith." *Froelich v. Erickson*, 96 F. Supp. 2d 507, 520 (D. Md. 2000) *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, 5 F. App'x 287 (4th Cir. 2001) *citing Nat'l Ass'n for the Advancement of Colored People v. Golding*, 342 Md. 663, 679 A.2d 554 (Md. 1996).

The Complaint identifies only one decision as an alleged fiduciary breach: "Greg Greenberg and Theodore Greenberg breached these duties by approving salaries for Greg Greenberg, Amanda Greenberg, and Tiffany Shade that were grossly disproportionate to the value each employee provided to the Debtor." Compl. ¶ 68.

It is not clear how Theodore Greenberg could have breached his duty of loyalty for this decision, since he did not advantage himself in any way by approving salaries for other people.

As discussed above, the Complaint has failed to undercut the presumption that compensation to the Employee Defendants is proper. However, even if that presumption is rebutted, the Complaint does not plead facts showing bad faith by Greg or Theodore Greenberg. In fact, the Complaint pleads nothing at all about their mental state or the process by which they allegedly approved the challenged compensation. These allegations are insufficient to overcome the business judgment rule. The Complaint does not state a claim for fiduciary breach and must be dismissed.

24

## I.    The Complaint Does Not Meet the Heightened Pleading Standard Pursuant to Rule 9(b)

Counts VI alleges intentional fraud.  This claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) (applicable pursuant to Fed. R. Bankr. P. 7009), which provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

To plead fraud, a complaint must specifically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313–14 (D. Md. 2000) *quoting Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D. Md. 1983); *see also Shulman v. Progressive Com. Cas. Co.*, No. CV DKC 19-1709, 2020 WL 758239, at *4 (D. Md. Feb. 14, 2020).  In *Shulman*, a fraud claim was dismissed when the complaint did not describe what the defendants gained from the alleged fraud, when the fraud occurred or who the fraudulent statements were given to.

The Complaint alleges that the Debtor's former president "knowingly and intentionally misrepresented that payments made using his company credit card were for work related expenses. Instead, many or all the expenses were personal in nature."  Compl. ¶ 71.  This is the extent of the factual allegations supporting the alleged fraud.  The Complaint does not allege who these false representations were made to, when those representations were made, what those representations contained or how much he allegedly obtained by making these representations.  The Complaint instead notes the total amount of spending on the company card and avers that some portion of that total, incurred at some point for unidentified purchases, was for personal expenses.  Compl. ¶ 45 (Former president "spent $671,095.54 on the company credit card, largely for personal

25

expenses…").  This cursory and conclusory allegation is totally insufficient to meet the heightened pleading standard of <u>Fed. R. Civ. P. 9(b)</u>, and Count VI must be dismissed.

**CONCLUSION**

The Complaint does not sufficiently plead specific facts, and must be dismissed entirely pursuant to <u>Fed. R. Civ. P. 8</u>.  In the alternative, the Complaint does not plead the Debtor's insolvency or financial distress, so Counts I through IV seeking avoidance and recovery must be dismissed.  The Complaint does not identify how any Defendant breached a fiduciary duty, so Count V must be dismissed.  The Complaint does not meet the heightened pleading requirements of <u>Fed. R. Civ. P. 9</u>, so Count VI for intentional fraud must be dismissed.

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re:<br><br>ESCO, Ltd.,[1]<br><br>            Debtor. | Chapter 11<br><br>Case No. 23-12237 (DER) |

### GLOBAL NOTES, STATEMENT OF LIMITATIONS, AND DISCLAIMERS REGARDING THE DEBTOR'S SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

The above-captioned debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case, with the assistance of its advisors, has filed its Schedules of Assets and Liabilities (the "**Schedules**") and Statements of Financial Affairs (the "**Statements**" and together with the Schedules, the "**Schedules and Statements**") with the United States Bankruptcy Court for the District of Maryland (the "**Bankruptcy Court**") pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

These Global Notes, Statement of Limitations, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "**Global Notes**") pertain to, are incorporated by reference in, and comprise an integral part of, the Debtor's Schedules and Statements. The Global Notes should be referred to, considered, and reviewed in connection with any review of the Schedules and Statements.

The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of the Debtor (whether publicly filed or otherwise). Additionally, the Schedules and Statements contain unaudited information that is subject to further review and potential adjustment and reflect the Debtor's reasonable efforts to report the assets and liabilities of the Debtor.

In preparing the Schedules and Statements, the Debtor relied upon information derived from its books and records that was available at the time of such preparation. Although the Debtor has made reasonable efforts to ensure the accuracy and completeness of such financial information, inadvertent errors or omissions, as well as the discovery of conflicting, revised, or subsequent information, may cause a material change to the Schedules and Statements.

The Debtor and its officers, employees, agents, attorneys, and advisors do not guarantee or warrant the accuracy or completeness of the data that is provided in the Schedules and Statements and shall not be liable for any loss or injury arising out of or caused in whole or in part by any act

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification are ESCO, Ltd., DBA Shoe City (5654). The Debtor's principal address is 1800 Woodlawn Drive, Gwynn Oak, Maryland 21207-4007.

or omission, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained in the Schedules and Statements. Except as expressly required by the Bankruptcy Code, the Debtor and its officers, employees, agents, attorneys, and advisors expressly do not undertake any obligation to update, modify, revise or re-categorize the information provided in the Schedules and Statements or to notify any third party should the information be updated, modified, revised, or re-categorized.

Stanley W. Mastil, Chief Restructuring Officer of the Debtor, has signed the Schedules and Statements. Mr. Mastil is an authorized signatory for the Debtor. In reviewing and signing the Schedules and Statements, Mr. Mastil has relied upon the efforts, statements, and representations of various personnel employed by the Debtor and its advisors. Mr. Mastil has not (and could not have) personally verified the accuracy of each such statement and representation, including, for example, statements and representations concerning amounts owed to creditors and their addresses. Neither the Schedules and Statements, nor the Global Notes, should be relied upon by any persons for information relating to current or future financial conditions, events, or performance of the Debtor.

## **Global Notes Overview and Methodology**

1.      **Reservation of Rights.** Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may exist. The Debtor reserves all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate to (including, without limitation): (a) amend the Schedules and Statements with respect to the description or designation of any "claim" asserted against the Debtor (as defined in section 105(a) of the Bankruptcy Code, a "**Claim**"); (b) dispute or otherwise assert offsets or defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (c) subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" and/or (d) object to the extent, validity, enforceability, priority, or avoidability of any Claim). Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such Claim or amount is not "disputed," "contingent," or "unliquidated." Listing a Claim does not constitute an admission of liability by the Debtor against which the Claim is listed or against the Debtor. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtor's chapter 11 case, including, without limitation, issues involving Claims, substantive consolidation, defenses, equitable subordination, recharacterization, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtor shall not be required to update the Schedules and Statements except as may be required by applicable law.

2.      **Description of Case and "as of" Information Date.** On March 31, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Debtor is operating its business and managing its properties as debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On April 13, 2023, the Office of the United States Trustee for the District of Maryland (Baltimore Division)

2

appointed an Official Committee of Unsecured Creditors (the "**Committee**"), pursuant to Bankruptcy Code section 1102.

The asset and liability information provided herein represents the asset and liability data of the Debtor as of the Petition Date, except as otherwise noted. In some instances, the Debtor has used estimates or prorated amounts where actual data as of the Petition Date was not available. The Debtor has made a reasonable effort to allocate liabilities between the pre- and postpetition periods based on the information available to the Debtor and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the Debtor may modify the allocation of liabilities between the pre- and postpetition periods and amend the Schedules and Statements accordingly.

3.     **Net Book Value of Assets**. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtor to obtain current market valuations for each of its property interests. When necessary, the Debtor has indicated that the value of certain assets is "unknown" or "undetermined." Accordingly, unless otherwise indicated, the Schedules and Statements reflect the net book value of the Debtor's assets as of the Petition Date. Furthermore, as applicable, assets that have fully depreciated or were expensed for accounting purposes may not be reflected in the Schedules and Statements as they have no net book value or have been scheduled as having zero net book value. The Debtor reserves its right to amend or adjust the value of each asset or liability set forth in the Schedules and Statements.

Book values of assets generally do not reflect the current performance of the assets or current market conditions and may differ materially from the actual value and/or performance of the underlying assets. Given the potential for volatility of market value for certain of the assets held by the Debtor, and depreciation, this difference is material. As such, the values listed in these Schedules and Statements cannot be, and were not, used to determine the Debtor's enterprise value.

4.     **Inventory**.  Inventory is reflected as net book value. The Debtor conducts a physical inventory from time to time as part of its normal policies and procedures. Prior physical inventory variances have been immaterial.

5.     **Recharacterization.** Notwithstanding the Debtor's reasonable efforts to properly characterize, classify, categorize, or designate certain Claims, assets, executory contracts, unexpired leases, postemployment benefits, and other items reported in the Schedules and Statements, the Debtor may, nevertheless, have improperly characterized, classified, categorized, designated, or omitted certain items. Accordingly, the Debtor reserves all of its rights to recharacterize, reclassify, re-categorize, re-designate, add, or delete items reported in the Schedules and Statements at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition. Disclosure of information in one or more Schedules, one or more Statement questions, or one or more exhibits or attachments to the Schedules and Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

3

89206116.3

6. **Liabilities.** The Debtor has sought to allocate assets and liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. Accordingly, the Debtor reserves all rights to amend, supplement, or otherwise modify its Schedules and Statements as is necessary or appropriate.

The Bankruptcy Court previously entered various orders the Debtor requested in certain motions filed along with its chapter 11 petitions (collectively, and together with any supplements, amendments, or further orders entered in response thereto, the "**First Day Orders**") authorizing, but not directing, the Debtor to, among other things, pay certain prepetition (i) service fees and charges assessed by the Debtor's banks and payment processors; (ii) employee wages, salaries, and other employee-related obligations; (iii) amounts owing to providers of utilities; (iv) insurance obligations; and (v) taxes and fees. As discussed below, prepetition liabilities which have been paid postpetition or those which the Debtor plans to pay via the authorization granted by the First Day Orders might not be listed in the Schedules and Statements. Regardless of whether such Claims are listed in the Schedules and Statements, to the extent that such Claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtor reserves the right to amend or supplement the Schedules and Statements as necessary and appropriate.

The liabilities listed on the Schedules do not reflect any analysis of Claims under Bankruptcy Code section 503(b)(9). Accordingly, the Debtor reserves all of its rights to dispute or challenge the validity of any asserted Claims under Bankruptcy Code section 503(b)(9) or the characterization of the structure of any such transaction or any document or instrument related to any creditor's Claim.

7. **Excluded Assets and Liabilities.** In certain instances, the Debtor has excluded certain categories of assets and liabilities from the Schedules and Statements. The Bankruptcy Court has authorized (but not directed) the Debtor to pay, in its discretion in the ordinary course of business, certain prepetition Claims on a postpetition basis. The Debtor has used its best efforts to remove such Claims from the Schedules.

As discussed above, the liabilities listed on the Schedules do not reflect any analysis of Claims under Bankruptcy Code section 503(b)(9).  Accordingly, the Debtor reserves all of its rights to dispute or challenge the validity of any asserted Claims under Bankruptcy Code section 503(b)(9).

8. **Insiders**. For the purposes of the Schedules and Statements, the Debtor defined "insider" pursuant to Bankruptcy Code section 101(31) as: (a) directors; (b) officers; (c) persons in control of the Debtor; (d) relatives of the Debtor's directors, officers, or persons in control of the Debtor; and (e) debtor/non-debtor affiliates of the foregoing. The parties identified as "insiders" have been included for informational purposes only and the inclusion of them in the Schedules and Statements shall not constitute an admission that those persons are insiders for purposes of Bankruptcy Code section 101(31). The Debtor does not take any position with respect to: (a) such person's influence over the control of the Debtor; (b) the management responsibilities or functions of such individual; (c) the decision-making or corporate authority of such individual; or (d) whether such individual could successfully argue that he or she is not an "insider" under

applicable law, including, without limitation, the federal securities laws or with respect to any theories of liability or for any other purpose.

9. **Intellectual Property Rights**. Exclusion of certain intellectual property shall not be construed as an admission that such intellectual property rights have been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction. Accordingly, the Debtor reserves all of its rights with respect to the legal status of any and all such intellectual property rights.

10. **Executory Contracts and Unexpired Leases**. Although the Debtor has made diligent attempts to identify contracts and unexpired leases within the scope of Bankruptcy Code section 365, in certain instances, the Debtor may have inadvertently failed to do so. Accordingly, the Debtor reserves all of its rights with respect to the inclusion or exclusion of executory contracts and unexpired leases, including the right to amend Schedule G at any time during the pendency of this chapter 11 case.

11. **Classifications**. Listing a Claim, contract or lease on (a) Schedule E/F, Part 1 as "priority unsecured," (b) Schedule E/F, Part 2 as "Non-priority unsecured," or (c) Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant, or a waiver of the Debtor's rights to recharacterize or reclassify such Claims or contracts or leases or to setoff against such Claims.

12. **Claims Description**. Schedules D and E/F permit the Debtor to designate a Claim as "disputed," "contingent," and/or "unliquidated." Any failure to designate a Claim on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated," or that such Claim is not subject to objection. The Debtor reserves all of its rights to dispute, or assert offsets or defenses to, any Claim reflected on its Schedules and Statements on any grounds, including liability or classification. Additionally, the Debtor expressly reserves all of its rights to subsequently designate such Claims as "disputed," "contingent" or "unliquidated." Moreover, listing a Claim does not constitute an admission of liability by the Debtor.

13. **Causes of Action**. Despite its reasonable efforts to identify all known assets, the Debtor may not have listed all of its causes of action or potential causes of action against third parties (collectively, "**Causes of Action**") as assets in the Schedules and Statements, including, without limitation, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. The Debtor reserves all of its rights with respect to any: (a) cause of action (including avoidance actions), (b) controversy, (c) right of setoff, (d) cross-claim, (e) counterclaim, (d) recoupment, and (e) any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on,

5

or after the Petition Date, in contract or in tort, in law, or in equity, or pursuant to any other theory of law they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any Claims or Causes of Action or in any way prejudice or impair the assertion of such Claims or Causes of Action.

14.     **Summary of Significant Reporting Policies**. The following is a summary of significant reporting policies:

        a.     Undetermined Amounts. The description of an amount as "unknown," "TBD," "undetermined," or similar indication is not intended to reflect upon the materiality of such amount.

        b.     Totals. All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

        c.     Liens. The value of assets listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

15.     **Estimates**. To prepare and file the Schedules in accordance with the deadline established in the chapter 11 case, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities. The Debtor reserves all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

16.     **Currency**. All amounts are reflected in U.S. dollars unless otherwise indicated.

17.     **Setoffs**. The Debtor periodically incurs certain setoffs in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, pricing discrepancies, returns, refunds, inadvertent payments, negotiations and/or disputes between the Debtor and its customers, suppliers, and third party insurers. These normal setoffs are consistent with the ordinary course of business in the Debtor's industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtor to list such ordinary course setoffs. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtor's Schedules and Statements.

18.     **Confidential or Sensitive Information**. There may be instances in which certain information in the Schedules and Statements intentionally has been omitted or redacted due to the nature of an agreement between the Debtor and a third party, concerns about the confidential nature of certain information, or otherwise. Additionally, Employee addresses have been listed as the address of the Debtor's corporate office.

19.     **Global Notes Control**. In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

## Specific Disclosures with respect to the Schedules

### Schedules A/B.

> Part 1, Cash and Cash Equivalents. Cash is listed on Schedule A/B as of the Petition Date. The Debtor's cash management system is set forth more fully in the Debtor's *Motion for Entry of an Order (I) Approving Continued Use of Cash Management System; (II) Authorizing the Debtor to Open and Close Bank Accounts; and (III) Authorizing Banks to Honor Certain Payments* [Docket No. 16].

> Part 10, Intangibles and Intellectual Property.

> Patents, Trademarks and/or other Intellectual Property are listed as an undetermined amount on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

> Customer Lists are listed as an undetermined amount on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

> Intangible Assets and Goodwill are listed as an undetermined amount on account of the fact that the fair market value of such intangible items such as Goodwill and Trade Names is dependent on numerous variables and factors and may differ significantly from their net book value.

**Schedules E/F.** The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtor's books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtor. The Debtor reserves all of its rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

The Bankruptcy Court has authorized the Debtor to pay, in its discretion, certain unsecured Claims pursuant to the First Day Orders, and the Debtor has paid certain wage-related claims for its employees pursuant to such First Day Orders. To the extent practicable, the Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date. The Debtor may pay additional Claims listed on Schedule E/F during the chapter 11 case pursuant to the First Day Orders and other orders of the Bankruptcy Court. The Debtor reserves its rights to update Schedule E/F to reflect such payments and to modify the claims register to account for the satisfaction of such Claims.

The Debtor has used reasonable efforts to report all general unsecured Claims against the Debtor on Schedule E/F based upon the Debtor's books and records as of the Petition Date. Claims listed on Schedule E/F may have been aggregated by creditor name and remittance address and may include several dates of incurrence for the aggregate balance listed.

89206116.3

The Debtor has made reasonable efforts to include all unsecured creditors on Schedule E/F including, but not limited to, trade creditors, consultants, and other service providers; however, the Debtor believes that there may be instances where creditors have yet to provide proper invoices for prepetition goods or services. While the Debtor maintains general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and are not attributed to specific vendors. Accordingly, such accruals have not been included on Schedule E/F.

Schedule E/F also contains information regarding pending litigation involving the Debtor. The amounts for these potential Claims are listed as undetermined and marked as contingent, unliquidated, and disputed in the Schedules.

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of executory contracts or unexpired leases. Additionally, Schedule E/F does not include potential rejection damage Claims, if any, of the counterparties to executory contracts and unexpired leases that have been or may be rejected, nor does it reflect applicable statutory caps or defenses to such potential rejection damage Claims.

Schedule E/F does not include certain deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are, however, reflected on the Debtor's books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific Claims as of the Petition Date.

**Schedule G**. Although commercially reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases, the Debtor's review is ongoing at the time of the filing of the Schedules and Statements and inadvertent errors, omissions or over-inclusion may have occurred in preparing Schedule G.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtor hereby reserves its rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G.

Certain of the contracts and leases listed on Schedule G may consist of several parts, including, purchase orders, amendments, restatements, waivers, letters, and other documents that may not be listed on Schedule G or that may be listed as a single entry. The Debtor expressly reserves its rights to challenge whether such related materials constitute an executory contract, a single contract or agreement, or multiple, severable or separate contracts or agreements.

89206116.3

Certain confidentiality and non-disclosure agreements may not be listed on Schedule G. The Debtor reserves all rights with respect to such agreements.

The contracts and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtor's use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon. In some cases, the same supplier or provider may appear multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the Debtor and such supplier or provider.

The Debtor reserves all rights, claims, and causes of action with respect to the agreements on Schedule G, including the right to dispute or challenge the characterization of the structure of any transactions or any document or instrument related to a creditor's Claims.

9

**Fill in this information to identify the case:**

Debtor name: ESCO, Ltd.

United States Bankruptcy Court for the: Maryland

Case number: 23-12237

☐ Check if this is an amended filing

Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

### Part 1: Income

**1. Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From<br>7/31/2022 | to  Filing Date | ☑ Operating a business<br>☐ Other | $35,616,117.36 |
| **For prior year:** | From<br>8/1/2021 | to<br>7/30/2022 | ☑ Operating a business<br>☐ Other | $55,339,149.00 |
| **For the year before that:** | From<br>7/26/2020 | to<br>7/31/2021 | ☑ Operating a business<br>☐ Other | $63,900,292.00 |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None

| | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From<br>7/31/2022 | to  Filing Date | Other Income | $7,231.95 |
| **For prior year:** | From<br>8/1/2021 | to<br>7/30/2022 | Other Income | $344,729.00 |
| **For the year before that:** | From<br>7/26/2020 | to<br>7/31/2021 | Other Income | $50,710.00 |

| Debtor | ESCO, Ltd. | Case number *(if known)* 23-12237 |
|---|---|---|
| | Name | |

## Part 2: List Certain Transfers Made Before Filing for Bankruptcy

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments or transfers - including expense reimbursements - to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.1<br><br>See SOFA 3 Attachment | | | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other |

### 4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1<br><br>See SOFA 4 Attachment<br><br>Relationship to debtor | | | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other |

### 5. Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.
Do not include property listed in line 6.

☒ None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|
| 5.1 | | | |

### 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☒ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| 6.1 | | | |
| | Last 4 digits of account number | | |

| Part 3: | Legal Actions or Assignments |
|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☑ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1 **Name** _____ **Case number** _____ | _____ | Name _____ Street _____ City _____ State ___ Zip ___ | ☐ Pending ☐ On appeal ☐ Concluded |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| 8.1 Custodian's name and address _____ Street _____ City ____ State __ Zip __ | Case title _____ Case number _____ Date of order or assignment _____ | Court name and address Name _____ Street _____ City ____ State __ Zip __ |

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☐ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1 Recipient's name 1 Team, LLC Street 4814 Lindsay Road City Baltimore  State MD  Zip 21229 **Recipient's relationship to debtor** None | Cash Donation | 7/5/2022, 7/19/2022 | $2,100.00 |

9.2

| Recipient's name | Cash Donation | 4/1/2022 | $3,000.00 |
| --- | --- | --- | --- |

Recipient's name
Pikesville High School

Street
7621 Labyrinth Rd.

| City | State | Zip |
| --- | --- | --- |
| Pikesville | MD | 21208 |

**Recipient's relationship to debtor**
None

9.4

| Recipient's name | 137 cases of footwear and apparel, 91 cases of footwear and apparel | 3/11/2022, 11/22/2022 | $85,284.70 |
| --- | --- | --- | --- |

Recipient's name
National Odd Shoes

Street
162 W. Boxelder St., Suite 4

| City | State | Zip |
| --- | --- | --- |
| Chandler | AZ | 85225 |

**Recipient's relationship to debtor**
None

9.4

| Recipient's name | Cash Donation | 12/20/2021 | $3,000.00 |
| --- | --- | --- | --- |

Recipient's name
Owings Mills Volunteer Fire

Street
10401 Owings Mills Blvd.

| City | State | Zip |
| --- | --- | --- |
| Owings Mills | MD | 21117 |

**Recipient's relationship to debtor**
None

9.5

| Recipient's name | Cash Donation | 11/5/2021 | $1,000.00 |
| --- | --- | --- | --- |

Recipient's name
Childrens Mission Inc

Street
7236 Early Golden Lane

| City | State | Zip |
| --- | --- | --- |
| Baltimore | MD | 21208 |

**Recipient's relationship to debtor**
None

9.6

| Recipient's name | Cash Donation | 9/13/2021 | $3,000.00 |
| --- | --- | --- | --- |

Recipient's name
Go Fund Me - Help us Burry

Street

| City | State | Zip |
| --- | --- | --- |

**Recipient's relationship to debtor**
None

9.7

| Recipient's name | Cash Donation | 4/25/2021 | $1,000.00 |
|---|---|---|---|
| The Jemicy School Inc | | | |

Street
11 Celadon Rd.

| City | State | Zip |
|---|---|---|
| Owings Mills | MD | 21117 |

**Recipient's relationship to debtor**
None

<table>
<tr><td style="background:black;color:white">**Part 5:**</td><td>**Losses**</td></tr>
</table>

**10. All losses from fire, theft, or other casualty within 1 year before filing this case**

☐ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B (Schedule A/B: Assets – Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| **10.1** Break in and theft of inventory | $32,294.00 | 8/27/2022 | $32,249.00 |
| **10.2** Damage to store premesis due to vehicle accident | $31,200.00 | 8/6/2022 | $31,200.00 |
| **10.3** Vehicle accident | $4,777.00 | 12/19/2022 | $4,777.00 |
| **10.4** Vehicle accident | $669.00 | 12/14/2022 | $669.00 |
| **10.5** Vehicle accident (rental vehicle) | $8.00 | 6/2/2022 | $8.00 |

<table>
<tr><td style="background:black;color:white">**Part 6:**</td><td>**Certain Payments or Transfers**</td></tr>
</table>

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| **11.1** GAVIN/SOLMONESE LLC 919 N. MARKET ST. SUITE 600 WILMINGTON, DE 19801 | N/A | 2/13/2023, 2/14/2023, 3/7/2023, 3/29/2023 | $126,100.00 |

**Email or website address**
gavinsolmonese.com

**Who made the payment, if not debtor?**
N/A

**11.2**

POLSINELLI PC
222 DELAWARE AVE.
SUITE 1101
WILMINGTON, DE 19801

N/A                                    3/17/2023, 3/29/2023              $250,000.00

**Email or website address**
polsinelli.com

**Who made the payment, if not debtor?**
N/A

**11.3**

GORDON BROTHERS RETAIL PARTNERS, LLC
800 BOYLSTON ST.
27TH FLOOR
BOSTON, MA 02199

N/A                                    3/17/2023                       $400,000.00

**Email or website address**
gordonbrothers.com

**Who made the payment, if not debtor?**
N/A

**11.4**

STRETTO, INC.
410 EXCHANGE
SUITE 100
IRVINE, CA 92602

N/A                                    3/29/2023                        $25,000.00

**Email or website address**
stretto.com

**Who made the payment, if not debtor?**
N/A

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| **12.1** | | | |
| **Trustee** | | | |

**13. Transfers not already listed on this statement**

List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.1 | | | |
| Relationship to debtor | | | |

## Part 7: Previous Locations

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | | | Dates of occupancy | |
|---|---|---|---|---|
| 14.1 Street | | | From | to |
| City | State | Zip | | |

## Part 8: Health Care Bankruptcies

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:

☐ diagnosing or treating injury, deformity, or disease, or

☐ providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to part 9.

☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1 Street | | |
| City   State   Zip | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider | **How are records kept?** Check all that apply: ☐ Electronically ☐ Paper |

## Part 9: Personally Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☑ Yes. State the nature of the information collected and retained.   Names, Addresses, Email Addresses

     Does the debtor have a privacy policy about that information?

     ☐ No

     ☑ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.

☑ Yes. Does the debtor serve as plan administrator?

　　☐ No. Go to Part 10.

　　☑ Yes. Fill in below:

**Name of plan**　　　　　　　　　　　　　**Employer identification number of the plan**

Shoe City 401(K) Plan　　　　　　　　　　52-0805654

Has the plan been terminated?

☑ No

☐ Yes

---

**Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred? Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| 18.1 <br> Name _____ <br> Street _____ <br> City ___ State ___ Zip ___ | ___ | ☐ Checking <br> ☐ Savings <br> ☐ Money market <br> ☐ Brokerage <br> ☐ Other <br> _____ | _____ | _____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| 19.1 <br> Name _____ <br> Street _____ <br> City ___ State ___ Zip ___ | Address _____ | _____ | ☐ No <br> ☐ Yes |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| 20.1 | | | |
| Name | Address | | ☐ No |
| Street | | | ☐ Yes |
| City          State          Zip | | | |

---

**Part 11:**  **Property the Debtor Holds or Controls that the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property

☐ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| 21.1 GENDR, LLC 1800 WOODLAWN DRIVE GWYNN OAK, MD 21207-4007 | 1800 Woodlawn Drive Gwynn Oak MD 21207-4007 | Cosmetics | Undetermined |

---

**Part 12:**  **Details About Environmental Information**

**For the purpose of Part 12, the following definitions apply:**

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders

☑ No.

☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| 22.1 Case Number | Name Street City          State          Zip | | ☐ Pending ☐ On appeal ☐ Concluded |

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| 23.1 | | | |
| Name | Name | | |
| Street | Street | | |
| City     State     Zip | City     State     Zip | | |

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| 24.1 | | | |
| Name | Name | | |
| Street | Street | | |
| City     State     Zip | City     State     Zip | | |

**Part 13:   Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1 | | EIN |
| | | **Dates business existed** |
| | | From                    to |

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1 | |
| MICHAEL WEBB- CFO<br>1800 WOODLAWN DRIVE<br>GWYNN OAK, MD 21207-4007 | From                    to<br>01/14/2019              Present |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| **26b.1** GORFINE, SCHILLER & GARDYN, PA<br>10045 RED RUN BLVD<br>SUITE 250<br>OWINGS MILLS, MD 21117 | From 1/1/2010      to Present |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☑ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| **26c.1** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| **26d.1** ADIDAS AMERICA, INC.<br>DEPT CH 19361<br>PALATINE, IL 60055-9405 |
| **26d.2** CONSOLIDATED INSURANCE<br>11403 CRONRIDGE DRIVE<br>SUITE 270<br>OWINGS MILLS, MD 21117-0664 |
| **26d.3** DR. MARTENS AIRWAIR USA LLC<br>DEPT. 3259<br>P.O. BOX 123259<br>DALLAS, TX 75312-3259 |
| **26d.4** EASTOVER PLAZA IMPROVEMENTS, LLC<br>C/O DLC MANAGEMENT CORPORATION<br>565 TAXTER ROAD<br>ELMSFORD, NY 10523 |
| **26d.5** EASTOVER PLZ IMPROVEMENTS LLC<br>PO BOX 828595<br>PHILADELPHIA, PA 19182-8595 |

26d.6

GAVIN/SOLMONESE
1007 ORANGE ST., 4TH FLOOR
SUITE 461
WILMINGTON, DE 19801

26d.7

GORDON BROTHERS
10218 N. PORT WASHINGTON ROAD
MEQUON, WI 53092

26d.8

JABEZ GROUP, LLC
220 WATERFORD SQUARE
SUITE C
MADISON, MS 39110

26d.9

NEW BALANCE ATHLETIC SHOE
PO BOX 415206
BOSTON, MA 02241-5206

26d.10

NIKE USA, INC.
PO BOX 281829
ACCOUNT# 80604
ATLANTA, GA 30384-1829

26d.11

PUMA NORTH AMERICA, INC.
PO BOX 74007020
CHICAGO, IL 60674-7020

26d.12

REEBOK INTERNATIONAL LTD.
DEPT CH 19405
PALATINE, IL 60055-9405

26d.13

SAUL EWING
P.O. BOX 825482
PHILADELPHIA, PA 19182-5482

26d.14

SOUTH EASTERN PARTNERS, LLC

26d.15

THE CIT GROUP/COMMERCIAL SVCS.
P.O. BOX 1036
CHARLOTTE, NC 28201

| Debtor | ESCO, Ltd. | Case number (if known) 23-12237 |
|--------|-----------|--------------------------------|
|        | Name      |                                 |

Case 23-12237   Doc 149   Filed 07/24/23   Page 92 of 109

**26d.16**

> TRUIST FINANCIAL CORPORATION
> 214 NORTH TRYON STREET
> CHARLOTTE, NC 28202

**26d.17**

> UNDER ARMOUR, INC.
> CUSTOMER ID# 11560145
> P.O. BOX 791022
> BALTIMORE, MD 21279-1022

**26d.18**

> VF CORPORATION
> 1551 WEWATTA ST.
> DENVER, CO 80202

**26d.19**

> WELLS FARGO TRADE CAPITAL SERVICES, INC.
> 119 WEST 40TH STREET
> NEW YORK, NY 10018

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☑ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| Kenneth L. Simmons III - Director of Loss Prevention | Inventory is taken and recorded perpetually | $11,821,734.68 (FIFO) |

| Name and address of the person who has possession of inventory records |
|---|

**27.1**

> MICHAEL WEBB- CFO
> 1800 WOODLAWN DRIVE
> GWYNN OAK, MD 21207-4007

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Position and nature of any interest | % of interest, if any |
|---|---|---|
| **28.1** <br><br> THEODORE GREENBERG <br> 1800 WOODLAWN DRIVE <br> GWYNN OAK, MD 21207-4007 | CEO, Class A Voting Stock | 163 Shares (.62%) |
| **28.2** <br><br> BETH GREENBERG <br> 1800 WOODLAWN DRIVE <br> GWYNN OAK, MD 21207-4007 | Class A Voting Stock | 348 Shares (1.33%) |

28.3

    GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 1
    1800 WOODLAWN DRIVE
    GWYNN OAK, MD 21207-4007

Class B Non-Voting Stock      9,135.35 Shares (35.0%)

28.4

    GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 1
    1800 WOODLAWN DRIVE
    GWYNN OAK, MD 21207-4007

Class B Non-Voting Stock      2,805.08 Shares (10.75%)

28.5

    GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 4
    1800 WOODLAWN DRIVE
    GWYNN OAK, MD 21207-4007

Class B Non-Voting Stock      12,670.01 Shares (48.54%)

28.6

    GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 5
    1800 WOODLAWN DRIVE
    GWYNN OAK, MD 21207-4007

Class B Non-Voting Stock      979.56 Shares (3.75%)

28.7

    GREG GREENBERG
    1800 WOODLAWN DRIVE
    GWYNN OAK, MD 21207-4007

President

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No

☐ Yes. Identify below.

| Name and Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|
| 29.1 | | From      to |

**30. Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No

☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1    Refer to SOFA 4 Attachment | | | |

| Relationship To Debtor |
|---|
| |

**31.Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No

☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| 31.1 | EIN |

**32.Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| 32.1 | EIN |

**SOFA 3 ATTACHMENT**
Certain payments or transfers to creditors within 90 days before filing this case

| Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Country | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|---|
| 26 INTERNATIONAL INC. | THE CIT GROUP/COMMERCIAL SVR. | PO BOX 1036 | CHARLOTTE | NC | 28201-1036 | | 2/7/2023 | $12,000.00 | SUPPLIERS OR VENDORS |
| **26 INTERNATIONAL INC. Total** | | | | | | | | **$12,000.00** | |
| | | | | | | | | | |
| ADIDAS AMERICA, INC. | DEPT CH 19361 | | PALATINE | IL | 60055-9405 | | 1/4/2023 | $99,468.28 | SUPPLIERS OR VENDORS |
| ADIDAS AMERICA, INC. | DEPT CH 19361 | | PALATINE | IL | 60055-9405 | | 2/7/2023 | $13,124.97 | SUPPLIERS OR VENDORS |
| **ADIDAS AMERICA, INC. Total** | | | | | | | | **$112,593.25** | |
| | | | | | | | | | |
| ADP, LLC | PO BOX 842875 | | BOSTON | MA | 02284-2875 | | 1/4/2023 | $352.56 | SERVICES |
| ADP, LLC | PO BOX 842875 | | BOSTON | MA | 02284-2875 | | 1/31/2023 | $3,802.58 | SERVICES |
| ADP, LLC | PO BOX 842875 | | BOSTON | MA | 02284-2875 | | 2/7/2023 | $3,585.93 | SERVICES |
| ADP, LLC | PO BOX 842875 | | BOSTON | MA | 02284-2875 | | 2/21/2023 | $3,339.95 | SERVICES |
| ADP, LLC | PO BOX 842875 | | BOSTON | MA | 02284-2875 | | 2/28/2023 | $373.71 | SERVICES |
| ADP, LLC | PO BOX 842875 | | BOSTON | MA | 02284-2875 | | 3/21/2023 | $3,476.48 | SERVICES |
| **ADP, LLC Total** | | | | | | | | **$15,331.21** | |
| | | | | | | | | | |
| ASICS AMERICA CORPORATION | PO BOX 827483 | | PHILADELPHIA | PA | 19182-7483 | | 1/24/2023 | $6,837.67 | SUPPLIERS OR VENDORS |
| **ASICS AMERICA CORPORATION Total** | | | | | | | | **$6,837.67** | |
| | | | | | | | | | |
| AVALARA ACT 6022 | 255 S. KING ST #1800 | | SEATTLE | WA | 98104 | | 1/12/2023 | $5,142.67 | SERVICES |
| AVALARA ACT 6022 | 255 S. KING ST #1800 | | SEATTLE | WA | 98104 | | 2/14/2023 | $5,110.18 | SERVICES |
| AVALARA ACT 6022 | 255 S. KING ST #1800 | | SEATTLE | WA | 98104 | | 3/14/2023 | $8,583.81 | SERVICES |
| **AVALARA ACT 6022 Total** | | | | | | | | **$18,836.66** | |
| | | | | | | | | | |
| AVANTE ELLSWORTH VENTRE I LLC | ASSET MANAGEMENT | 9010 OVERLOOK BOULEVARD | BRENTWOOD | TN | 37027 | | 3/3/2023 | $43,893.46 | TRADE PAYABLE |
| **AVANTE ELLSWORTH VENTRE I LLC Total** | | | | | | | | **$43,893.46** | |
| | | | | | | | | | |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 1/4/2023 | $3,679.41 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 1/10/2023 | $16,506.62 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 1/17/2023 | $4,796.01 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 1/24/2023 | $4,330.70 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 1/31/2023 | $31,876.25 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 2/7/2023 | $11,044.44 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 2/14/2023 | $4,418.05 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 2/21/2023 | $2,753.28 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 2/28/2023 | $1,486.03 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 3/7/2023 | $17,900.96 | UTILITY |
| BALTIMORE GAS ELECTRIC | PO BOX 13070 | | PHILADELPHIA | PA | 19101-3070 | | 3/14/2023 | $4,649.32 | UTILITY |
| **BALTIMORE GAS ELECTRIC Total** | | | | | | | | **$103,441.07** | |
| | | | | | | | | | |
| BALTIMOREGOVT | COLLECTION DIVISION | P.O. BOX 17535 | BALTIMORE | MD | 21297-1535 | | 1/24/2023 | $105.90 | TAXES |
| BALTIMOREGOVT | COLLECTION DIVISION | P.O. BOX 17535 | BALTIMORE | MD | 21297-1535 | | 2/24/2023 | $108,176.49 | TAXES |
| BALTIMOREGOVT | COLLECTION DIVISION | P.O. BOX 17535 | BALTIMORE | MD | 21297-1535 | | 2/24/2023 | $51.40 | TAXES |
| **BALTIMOREGOVT Total** | | | | | | | | **$108,333.79** | |
| | | | | | | | | | |
| BENEFITMALL PYMT | PO BOX 418742 | | BOSTON | MA | 02241-8742 | | 1/20/2023 | $42,696.99 | EMPLOYEE BENEFITS |
| BENEFITMALL PYMT | PO BOX 418742 | | BOSTON | MA | 02241-8742 | | 2/21/2023 | $37,057.31 | EMPLOYEE BENEFITS |
| BENEFITMALL PYMT | PO BOX 418742 | | BOSTON | MA | 02241-8742 | | 3/15/2023 | $39,121.64 | EMPLOYEE BENEFITS |
| **BENEFITMALL PYMT Total** | | | | | | | | **$118,875.94** | |
| | | | | | | | | | |
| BRE DDR BR WHITE OAK VA LLC | C/O DDR CORP. ATTN: LEASING. | 3300 ENTERPRISE PARKWAY | BEACHWOOD | OH | 44122 | | 3/15/2023 | $14,313.68 | TRADE PAYABLE |
| **BRE DDR BR WHITE OAK VA LLC Total** | | | | | | | | **$14,313.68** | |
| | | | | | | | | | |
| BRIAN BROTHERS, INC. | THE CIT GROUP/COMMERICAL SERVI | P.O BOX 1036 | CHARLOTTE | NC | 28201-1036 | | 1/24/2023 | $30,420.00 | SUPPLIERS OR VENDORS |
| **BRIAN BROTHERS, INC. Total** | | | | | | | | **$30,420.00** | |
| | | | | | | | | | |
| BRINKS INCORPORATED | 3235 SATELLITE BOULEVARD | BUILDING 400, SUITE 300 | DULUTH | GA | 30096 | | 1/4/2023 | $18,270.61 | SERVICES |
| BRINKS INCORPORATED | 3235 SATELLITE BOULEVARD | BUILDING 400, SUITE 300 | DULUTH | GA | 30096 | | 2/7/2023 | $18,758.35 | SERVICES |
| BRINKS INCORPORATED | 3235 SATELLITE BOULEVARD | BUILDING 400, SUITE 300 | DULUTH | GA | 30096 | | 2/21/2023 | $18,717.34 | SERVICES |
| BRINKS INCORPORATED | 3235 SATELLITE BOULEVARD | BUILDING 400, SUITE 300 | DULUTH | GA | 30096 | | 3/28/2023 | $18,266.85 | SERVICES |
| **BRINKS INCORPORATED Total** | | | | | | | | **$74,013.15** | |
| | | | | | | | | | |
| CDTFA | P.O. BOX 942879 | | SACRAMENTO | CA | 94279 | | 3/27/2023 | $9,277.64 | TAXES |
| **CDTFA Total** | | | | | | | | **$9,277.64** | |
| | | | | | | | | | |
| CHESAPEAKE SQUARE SHOPPING CEN | 10096 RED RUN BLVD. SUITE 300 | | OWINGS MILLS | MD | 21117 | | 1/26/2023 | $12,320.50 | TRADE PAYABLE |
| CHESAPEAKE SQUARE SHOPPING CEN | 10096 RED RUN BLVD. SUITE 300 | | OWINGS MILLS | MD | 21117 | | 3/1/2023 | $12,320.50 | TRADE PAYABLE |
| **CHESAPEAKE SQUARE SHOPPING CEN Total** | | | | | | | | **$24,641.00** | |
| | | | | | | | | | |

| Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Country | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|---|
| COLISEUM CROSSING ASSOCIATES, | C/O ROBERT BROWN & ASSOCIATES INC. | 41 OLD OYSTER POINT ROAD, SUITE A | NEWPORT NEWS | VA | 23602 | | 1/26/2023 | $9,126.34 | TRADE PAYABLE |
| **COLISEUM CROSSING ASSOCIATES, Total** | | | | | | | | **$9,126.34** | |
| | | | | | | | | | |
| COMCAST | PO BOX 70219 | | PHILADELPHIA | PA | 19176-0219 | | 1/10/2023 | $3,802.34 | SERVICES |
| COMCAST | PO BOX 70219 | | PHILADELPHIA | PA | 19176-0219 | | 1/17/2023 | $3,038.59 | SERVICES |
| COMCAST | PO BOX 70219 | | PHILADELPHIA | PA | 19176-0219 | | 1/31/2023 | $2,895.09 | SERVICES |
| COMCAST | PO BOX 70219 | | PHILADELPHIA | PA | 19176-0219 | | 2/7/2023 | $2,624.60 | SERVICES |
| COMCAST | PO BOX 70219 | | PHILADELPHIA | PA | 19176-0219 | | 2/21/2023 | $1,298.44 | SERVICES |
| COMCAST | PO BOX 70219 | | PHILADELPHIA | PA | 19176-0219 | | 2/28/2023 | $4,290.35 | SERVICES |
| COMCAST | PO BOX 70219 | | PHILADELPHIA | PA | 19176-0219 | | 3/7/2023 | $1,855.56 | SERVICES |
| **COMCAST Total** | | | | | | | | **$19,804.97** | |
| | | | | | | | | | |
| COMP OF MARYLAND | 110 CARROLL ST. | | ANNAPOLIS | MD | 21411 | | 1/24/2023 | $231,633.02 | TAXES |
| COMP OF MARYLAND | 110 CARROLL ST. | | ANNAPOLIS | MD | 21411 | | 3/22/2023 | $175,123.15 | TAXES |
| **COMP OF MARYLAND Total** | | | | | | | | **$406,756.17** | |
| | | | | | | | | | |
| CONVERSE INC. | 13328 COLLECTIONS CENTER DRIVE | | CHICAGO | IL | 60693-0133 | | 1/10/2023 | $23,421.00 | SUPPLIERS OR VENDORS |
| CONVERSE INC. | 13328 COLLECTIONS CENTER DRIVE | | CHICAGO | IL | 60693-0133 | | 1/24/2023 | $32,642.96 | SUPPLIERS OR VENDORS |
| CONVERSE INC. | 13328 COLLECTIONS CENTER DRIVE | | CHICAGO | IL | 60693-0133 | | 2/14/2023 | $36,034.29 | SUPPLIERS OR VENDORS |
| CONVERSE INC. | 13328 COLLECTIONS CENTER DRIVE | | CHICAGO | IL | 60693-0133 | | 3/1/2023 | $81,733.34 | SUPPLIERS OR VENDORS |
| **CONVERSE INC. Total** | | | | | | | | **$173,831.59** | |
| | | | | | | | | | |
| CROSSROADS INTERACTIVE, LLC | 3600 CLIPPER MILL ROAD | | BALTIMORE | MD | 21211 | | 2/7/2023 | $34,813.30 | SUPPLIERS OR VENDORS |
| CROSSROADS INTERACTIVE, LLC | 3600 CLIPPER MILL ROAD | | BALTIMORE | MD | 21211 | | 3/7/2023 | $34,813.30 | SUPPLIERS OR VENDORS |
| CROSSROADS INTERACTIVE, LLC | 3600 CLIPPER MILL ROAD | | BALTIMORE | MD | 21211 | | 3/21/2023 | $69,626.60 | SUPPLIERS OR VENDORS |
| **CROSSROADS INTERACTIVE, LLC Total** | | | | | | | | **$139,253.20** | |
| | | | | | | | | | |
| CS REALTY GROUP LLC | C/O MAVERICK MANAGEMENT CORP. | 1000 PENNSYLVANIA AVENUE | BROOKLYN | NY | 11207 | | 1/26/2023 | $11,250.00 | TRADE PAYABLE |
| CS REALTY GROUP LLC | C/O MAVERICK MANAGEMENT CORP. | 1000 PENNSYLVANIA AVENUE | BROOKLYN | NY | 11207 | | 2/7/2023 | $833.44 | TRADE PAYABLE |
| **CS REALTY GROUP LLC Total** | | | | | | | | **$12,083.44** | |
| | | | | | | | | | |
| DC-OTR-WEB-SLU | P.O. BOX 96019 | | WASHINGTON | DC | 20090 | | 1/23/2023 | $2,466.27 | TAXES |
| DC-OTR-WEB-SLU | P.O. BOX 96019 | | WASHINGTON | DC | 20090 | | 1/23/2023 | $8,423.69 | TAXES |
| DC-OTR-WEB-SLU | P.O. BOX 96019 | | WASHINGTON | DC | 20090 | | 1/23/2023 | $12,011.77 | TAXES |
| DC-OTR-WEB-SLU | P.O. BOX 96019 | | WASHINGTON | DC | 20090 | | 1/23/2023 | $13,019.76 | TAXES |
| DC-OTR-WEB-SLU | P.O. BOX 96019 | | WASHINGTON | DC | 20090 | | 1/23/2023 | $21,506.35 | TAXES |
| DC-OTR-WEB-SLU | P.O. BOX 96019 | | WASHINGTON | DC | 20090 | | 2/23/2023 | $5,553.00 | TAXES |
| DC-OTR-WEB-SLU | P.O. BOX 96019 | | WASHINGTON | DC | 20090 | | 3/22/2023 | $7,728.54 | TAXES |
| **DC-OTR-WEB-SLU Total** | | | | | | | | **$70,769.38** | |
| | | | | | | | | | |
| DM TRANSPORTATION MANAGEMENT S | PO BOX 62924 | | BALTIMORE | MD | 21264-2924 | | 1/4/2023 | $233.00 | SUPPLIERS OR VENDORS |
| DM TRANSPORTATION MANAGEMENT S | PO BOX 62924 | | BALTIMORE | MD | 21264-2924 | | 2/7/2023 | $3,807.99 | SUPPLIERS OR VENDORS |
| DM TRANSPORTATION MANAGEMENT S | PO BOX 62924 | | BALTIMORE | MD | 21264-2924 | | 2/21/2023 | $5,560.75 | SUPPLIERS OR VENDORS |
| **DM TRANSPORTATION MANAGEMENT S Total** | | | | | | | | **$9,601.74** | |
| | | | | | | | | | |
| DOMINION ENERGY VIRGINIA | PO BOX 26543 | | RICHMOND | VA | 23290-0001 | | 1/10/2023 | $1,555.55 | UTILITY |
| DOMINION ENERGY VIRGINIA | PO BOX 26543 | | RICHMOND | VA | 23290-0001 | | 1/24/2023 | $1,710.83 | UTILITY |
| DOMINION ENERGY VIRGINIA | PO BOX 26543 | | RICHMOND | VA | 23290-0001 | | 1/31/2023 | $3,041.28 | UTILITY |
| DOMINION ENERGY VIRGINIA | PO BOX 26543 | | RICHMOND | VA | 23290-0001 | | 2/21/2023 | $1,195.09 | UTILITY |
| DOMINION ENERGY VIRGINIA | PO BOX 26543 | | RICHMOND | VA | 23290-0001 | | 2/28/2023 | $1,327.79 | UTILITY |
| DOMINION ENERGY VIRGINIA | PO BOX 26543 | | RICHMOND | VA | 23290-0001 | | 3/7/2023 | $1,542.63 | UTILITY |
| **DOMINION ENERGY VIRGINIA Total** | | | | | | | | **$10,373.17** | |
| | | | | | | | | | |
| EDGEWATER PARTNERSHIP LP | C/O THE POWER PLANT. | 601 E. PRATT STREET, 6TH FLOOR | BALTIMORE | MD | 21202 | | 1/26/2023 | $8,616.63 | TRADE PAYABLE |
| EDGEWATER PARTNERSHIP LP | C/O THE POWER PLANT. | 601 E. PRATT STREET, 6TH FLOOR | BALTIMORE | MD | 21202 | | 2/7/2023 | $2,724.71 | TRADE PAYABLE |
| **EDGEWATER PARTNERSHIP LP Total** | | | | | | | | **$11,341.34** | |
| | | | | | | | | | |
| EMU AUSTRALIA (USA) INC | SUITE 103 | 153 N. COAST HIGHWAY 101 | SOLANA BEACH | CA | 92075 | | 1/31/2023 | $17,292.00 | SUPPLIERS OR VENDORS |
| EMU AUSTRALIA (USA) INC | SUITE 103 | 153 N. COAST HIGHWAY 101 | SOLANA BEACH | CA | 92075 | | 1/31/2023 | $5,568.00 | SUPPLIERS OR VENDORS |
| **EMU AUSTRALIA (USA) INC Total** | | | | | | | | **$22,860.00** | |
| | | | | | | | | | |
| EPITOME TRADING INC. | 927 S. MCGARRY ST | | LOS ANGLES | CA | 90021 | | 2/7/2023 | $16,010.00 | SUPPLIERS OR VENDORS |
| **EPITOME TRADING INC. Total** | | | | | | | | **$16,010.00** | |
| | | | | | | | | | |
| FEDERAL REALTY INVESTMENT TRUST | ATTN: LEGAL DEPT. | 900 ROSE AVE, SUITE 200 | NORTH BETHESDA | MD | 20852 | | 1/26/2023 | $29,920.00 | LANDLORD |
| FEDERAL REALTY INVESTMENT TRUST | ATTN: LEGAL DEPT. | 900 ROSE AVE, SUITE 200 | NORTH BETHESDA | MD | 20852 | | 3/1/2023 | $30,322.94 | LANDLORD |

**SOFA 3 ATTACHMENT**
Certain payments or transfers to creditors within 90 days before filing this case

| Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Country | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|---|
| FEDERAL REALTY INVESTMENT TRUST | ATTN: LEGAL DEPT. | 900 ROSE AVE, SUITE 200 | NORTH BETHESDA | MD | 20852 | | 1/10/2023 | $15,601.01 | LANDLORD |
| **FEDERAL REALTY INVESTMENT TRUST Total** | | | | | | | | **$75,843.95** | |
| | | | | | | | | | |
| FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-7461 | | 1/10/2023 | $18.50 | SERVICES |
| FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-7461 | | 1/24/2023 | $1,020.82 | SERVICES |
| FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-7461 | | 1/31/2023 | $2,315.70 | SERVICES |
| FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-7461 | | 2/7/2023 | $2,097.71 | SERVICES |
| FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-7461 | | 2/14/2023 | $1,757.73 | SERVICES |
| FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-7461 | | 2/21/2023 | $2,321.02 | SERVICES |
| FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-7461 | | 3/7/2023 | $1,993.83 | SERVICES |
| FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-7461 | | 3/14/2023 | $3,112.22 | SERVICES |
| **FEDEX Total** | | | | | | | | **$14,637.53** | |
| | | | | | | | | | |
| FLA DEPT REVENUE | 1379 BLOUNTSTOWN HWY. | | TALLAHASSEE | FL | 32304-2716 | | 1/20/2023 | $7,208.62 | TAXES |
| FLA DEPT REVENUE | 1379 BLOUNTSTOWN HWY. | | TALLAHASSEE | FL | 32304-2716 | | 2/17/2023 | $2,604.26 | TAXES |
| FLA DEPT REVENUE | 1379 BLOUNTSTOWN HWY. | | TALLAHASSEE | FL | 32304-2716 | | 3/17/2023 | $4,193.76 | TAXES |
| **FLA DEPT REVENUE Total** | | | | | | | | **$14,006.64** | |
| | | | | | | | | | |
| FUNDGCIRCLE_USA | PO BOX 888383 | | LOS ANGELES | CA | 90088-8383 | | 2/13/2023 | $38,325.05 | LOAN PAYMENT |
| FUNDGCIRCLE_USA | PO BOX 888383 | | LOS ANGELES | CA | 90088-8383 | | 2/23/2023 | $34,040.33 | LOAN PAYMENT |
| FUNDING CIRCLE | PO BOX 888383 | | LOS ANGELES | CA | 90088-8383 | | 3/24/2023 | $34,040.33 | LOAN PAYMENT |
| **FUNDING CIRCLE  Total** | | | | | | | | **$106,405.71** | |
| | | | | | | | | | |
| GAVIN/SOLMONESE LLC | 1007 ORANGE ST., 4TH FLOOR | SUITE 461 | WILMINGTON | DE | 19801 | | 3/29/2023 | $41,100.00 | RESTRUCTURING EXPENSE |
| GAVIN/SOLMONESE LLC | 1007 ORANGE ST., 4TH FLOOR | SUITE 461 | WILMINGTON | DE | 19801 | | 2/10/2023 | $30,000.00 | PROFESSIONAL |
| GAVIN/SOLMONESE LLC | 1007 ORANGE ST., 4TH FLOOR | SUITE 461 | WILMINGTON | DE | 19801 | | 2/10/2023 | $30,000.00 | PROFESSIONAL |
| GAVIN/SOLMONESE LLC | 1007 ORANGE ST., 4TH FLOOR | SUITE 461 | WILMINGTON | DE | 19801 | | 2/13/2023 | $30,000.00 | PROFESSIONAL |
| GAVIN/SOLMONESE LLC | 1007 ORANGE ST., 4TH FLOOR | SUITE 461 | WILMINGTON | DE | 19801 | | 2/14/2023 | $30,000.00 | PROFESSIONAL |
| GAVIN/SOLMONESE LLC | 1007 ORANGE ST., 4TH FLOOR | SUITE 461 | WILMINGTON | DE | 19801 | | 3/7/2023 | $25,000.00 | PROFESSIONAL |
| **GAVIN/SOLMONESE LLC Total** | | | | | | | | **$186,100.00** | |
| | | | | | | | | | |
| GOOD HOPE MARKET PLACE, LP | ATTN: LOAN PORTFOLIO MANAGER | 3333 PEACHTREE ROAD, 4TH FLOOR | ATLANTA | GA | 30326 | | 1/13/2023 | $6,486.16 | TRADE PAYABLE |
| GOOD HOPE MARKET PLACE, LP | ATTN: LOAN PORTFOLIO MANAGER | 3333 PEACHTREE ROAD, 4TH FLOOR | ATLANTA | GA | 30326 | | 1/26/2023 | $21,784.29 | TRADE PAYABLE |
| GOOD HOPE MARKET PLACE, LP | ATTN: LOAN PORTFOLIO MANAGER | 3333 PEACHTREE ROAD, 4TH FLOOR | ATLANTA | GA | 30326 | | 3/1/2023 | $21,692.17 | TRADE PAYABLE |
| GOOD HOPE MARKET PLACE, LP | ATTN: LOAN PORTFOLIO MANAGER | 3333 PEACHTREE ROAD, 4TH FLOOR | ATLANTA | GA | 30326 | | 3/1/2023 | $21,784.29 | TRADE PAYABLE |
| **GOOD HOPE MARKET PLACE, LP Total** | | | | | | | | **$71,746.91** | |
| | | | | | | | | | |
| GORDON BROTHERS RETAIL PARTNERS | 800 BOYLSTON ST. | 27TH FLOOR | BOSTON | MA | 53092 | | 3/17/2023 | $400,000.00 | RESTRUCTURING EXPENSE |
| **GORDON BROTHERS RETAIL PARTNERS Total** | | | | | | | | **$400,000.00** | |
| | | | | | | | | | |
| GORFINE,SCHILLER & GARDYN, P. | 19833 LEITERSBURG PIKE #2, | | HAGERSTOWN | MD | 21742 | | 2/7/2023 | $4,950.00 | SERVICES |
| GORFINE,SCHILLER & GARDYN, P. | 19833 LEITERSBURG PIKE #2, | | HAGERSTOWN | MD | 21742 | | 2/14/2023 | $4,950.00 | SERVICES |
| **GORFINE,SCHILLER & GARDYN, P. Total** | | | | | | | | **$9,900.00** | |
| | | | | | | | | | |
| H & R LEASING LLC | 1 WEST PENNSYLVANIA AVE,STE 32 | | BALTIMORE | MD | 21204 | | 1/4/2023 | $3,000.00 | SERVICES |
| H & R LEASING LLC | 1 WEST PENNSYLVANIA AVE,STE 32 | | BALTIMORE | MD | 21204 | | 2/7/2023 | $3,000.00 | SERVICES |
| H & R LEASING LLC | 1 WEST PENNSYLVANIA AVE,STE 32 | | BALTIMORE | MD | 21204 | | 2/28/2023 | $3,000.00 | SERVICES |
| **H & R LEASING LLC Total** | | | | | | | | **$9,000.00** | |
| | | | | | | | | | |
| HARVIC INTERNATIONAL LTD. | WELLS FARGO BANK, N.A | PO BOX 842683 | BOSTON | MA | 02284-2683 | | 2/7/2023 | $12,924.00 | SUPPLIERS OR VENDORS |
| HARVIC INTERNATIONAL LTD. | WELLS FARGO BANK, N.A | PO BOX 842683 | BOSTON | MA | 02284-2683 | | 2/14/2023 | $11,280.00 | SUPPLIERS OR VENDORS |
| **HARVIC INTERNATIONAL LTD. Total** | | | | | | | | **$24,204.00** | |
| | | | | | | | | | |
| IRS | DEPARTMENT OF THE TREASURY | INTERNAL REVENUE SERVICE CENTER | KANSAS CITY | MO | 64999 | | 1/23/2023 | $22,878.00 | TAXES |
| **IRS Total** | | | | | | | | **$22,878.00** | |
| | | | | | | | | | |
| KIDZ CONCEPTS | 1412 BROADWAY, 3RD FLOOR | | NEW YORK | NY | 10018 | | 2/14/2023 | $12,009.17 | SUPPLIERS OR VENDORS |
| **KIDZ CONCEPTS Total** | | | | | | | | **$12,009.17** | |
| | | | | | | | | | |
| KING ASSOCIATES LIMITED PARTNE | C/O HARVEY PROPERTY MANAGEMENT COMPANY, INC. | 6708 WISCONSIN AVENUE, SUITE 360 | BETHESDA | MD | 20815 | | 1/26/2023 | $12,772.99 | TRADE PAYABLE |
| **KING ASSOCIATES LIMITED PARTNE Total** | | | | | | | | **$12,772.99** | |
| | | | | | | | | | |
| MAXY TRADING CORP | ROSENTHAL & ROSENTHAL, INC. | PO BOX 88926 | CHICAGO | IL | 60695-1926 | | 2/7/2023 | $11,100.00 | SUPPLIERS OR VENDORS |

**SOFA 3 ATTACHMENT**
Certain payments or transfers to creditors within 90 days before filing this case

| Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Country | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|---|
| **MAXY TRADING CORP Total** | | | | | | | | **$11,100.00** | |
| | | | | | | | | | |
| NEW BALANCE ATHLETIC SHOE | PO BOX 415206 | | BOSTON | MA | 02241-5206 | | 1/10/2023 | $189,260.10 | SUPPLIERS OR VENDORS |
| NEW BALANCE ATHLETIC SHOE | PO BOX 415206 | | BOSTON | MA | 02241-5206 | | 1/31/2023 | $44,308.00 | SUPPLIERS OR VENDORS |
| NEW BALANCE ATHLETIC SHOE | PO BOX 415206 | | BOSTON | MA | 02241-5206 | | 2/7/2023 | $76,937.76 | SUPPLIERS OR VENDORS |
| NEW BALANCE ATHLETIC SHOE | PO BOX 415206 | | BOSTON | MA | 02241-5206 | | 2/21/2023 | $167,876.76 | SUPPLIERS OR VENDORS |
| **NEW BALANCE ATHLETIC SHOE Total** | | | | | | | | **$478,382.62** | |
| | | | | | | | | | |
| NEW ERA CAP, LLC | PO BOX 7410646 | | CHICAGO | IL | 60674-0646 | | 2/7/2023 | $26,676.32 | SUPPLIERS OR VENDORS |
| **NEW ERA CAP, LLC Total** | | | | | | | | **$26,676.32** | |
| | | | | | | | | | |
| NEW OAK HILL PLAZA, LLC | 65 HARRISTOWN ROAD, SUITE 301 | | GLEN ROCK | NJ | 7452 | | 1/20/2023 | $10,183.94 | TRADE PAYABLE |
| NEW OAK HILL PLAZA, LLC | 65 HARRISTOWN ROAD, SUITE 301 | | GLEN ROCK | NJ | 7452 | | 1/26/2023 | $16,014.66 | TRADE PAYABLE |
| NEW OAK HILL PLAZA, LLC | 65 HARRISTOWN ROAD, SUITE 301 | | GLEN ROCK | NJ | 7452 | | 3/1/2023 | $16,268.82 | TRADE PAYABLE |
| **NEW OAK HILL PLAZA, LLC Total** | | | | | | | | **$42,467.42** | |
| | | | | | | | | | |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 1/4/2023 | $499,220.08 | SUPPLIERS OR VENDORS |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 1/10/2023 | $153,668.52 | SUPPLIERS OR VENDORS |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 1/24/2023 | $432,872.57 | SUPPLIERS OR VENDORS |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 1/31/2023 | $204,609.11 | SUPPLIERS OR VENDORS |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 2/7/2023 | $118,057.12 | SUPPLIERS OR VENDORS |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 2/14/2023 | $226,148.22 | SUPPLIERS OR VENDORS |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 2/14/2023 | $226,058.22 | SUPPLIERS OR VENDORS |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 2/21/2023 | $271,654.90 | SUPPLIERS OR VENDORS |
| NIKE USA, INC. | PO BOX 281829 | ACCOUNT# 80604 | ATLANTA | GA | 30384-1829 | | 3/1/2023 | $836,870.79 | SUPPLIERS OR VENDORS |
| **NIKE USA, INC. Total** | | | | | | | | **$2,969,159.53** | |
| | | | | | | | | | |
| NYS DTF SALES | W.A. HARRIMAN CAMPUS | | ALBANY | NY | 12227 | | 1/20/2023 | $1,987.15 | TAXES |
| NYS DTF SALES | W.A. HARRIMAN CAMPUS | | ALBANY | NY | 12227 | | 2/21/2023 | $1,230.80 | TAXES |
| NYS DTF SALES | W.A. HARRIMAN CAMPUS | | ALBANY | NY | 12227 | | 3/20/2023 | $5,667.40 | TAXES |
| **NYS DTF SALES Total** | | | | | | | | **$8,885.35** | |
| | | | | | | | | | |
| ORION SYSTEMS INTEGRATORS | ATTN: ACCOUNTS RECEIVABLE DEPT | 333 THORNALL, 7TH FLOOR | EDISON | NJ | 8837 | | 1/10/2023 | $4,055.00 | SERVICES |
| ORION SYSTEMS INTEGRATORS | ATTN: ACCOUNTS RECEIVABLE DEPT | 333 THORNALL, 7TH FLOOR | EDISON | NJ | 8837 | | 2/7/2023 | $4,055.00 | SERVICES |
| **ORION SYSTEMS INTEGRATORS Total** | | | | | | | | **$8,110.00** | |
| | | | | | | | | | |
| OUTRANK BRAND, INC | 13456 SW 131 STREET | | MIAMI | FL | 33186 | | 2/7/2023 | $9,100.00 | SUPPLIERS OR VENDORS |
| **OUTRANK BRAND, INC Total** | | | | | | | | **$9,100.00** | |
| | | | | | | | | | |
| PACIFIC LOGISTICS CORPORATION | 7255 ROSEMEAD BLVD. | | PICO RIVERA | CA | 90660 | | 1/10/2023 | $14,317.79 | SERVICES |
| PACIFIC LOGISTICS CORPORATION | 7255 ROSEMEAD BLVD. | | PICO RIVERA | CA | 90660 | | 1/24/2023 | $13,993.09 | SERVICES |
| PACIFIC LOGISTICS CORPORATION | 7255 ROSEMEAD BLVD. | | PICO RIVERA | CA | 90660 | | 1/31/2023 | $7,496.52 | SERVICES |
| PACIFIC LOGISTICS CORPORATION | 7255 ROSEMEAD BLVD. | | PICO RIVERA | CA | 90660 | | 2/7/2023 | $8,580.13 | SERVICES |
| PACIFIC LOGISTICS CORPORATION | 7255 ROSEMEAD BLVD. | | PICO RIVERA | CA | 90660 | | 2/14/2023 | $20,186.71 | SERVICES |
| PACIFIC LOGISTICS CORPORATION | 7255 ROSEMEAD BLVD. | | PICO RIVERA | CA | 90660 | | 2/28/2023 | $22,116.03 | SERVICES |
| PACIFIC LOGISTICS CORPORATION | 7255 ROSEMEAD BLVD. | | PICO RIVERA | CA | 90660 | | 3/7/2023 | $3,282.52 | SERVICES |
| PACIFIC LOGISTICS CORPORATION | 7255 ROSEMEAD BLVD. | | PICO RIVERA | CA | 90660 | | 3/14/2023 | $5,713.33 | SERVICES |
| **PACIFIC LOGISTICS CORPORATION Total** | | | | | | | | **$95,686.12** | |
| | | | | | | | | | |
| PENSKE TRUCK LEASING CO., L.P. | 2675 MORGANTOWN ROAD | | READING | PA | 19607 | | 1/10/2023 | $6,549.58 | SERVICES |
| PENSKE TRUCK LEASING CO., L.P. | 2675 MORGANTOWN ROAD | | READING | PA | 19607 | | 1/17/2023 | $75.00 | SERVICES |
| PENSKE TRUCK LEASING CO., L.P. | 2675 MORGANTOWN ROAD | | READING | PA | 19607 | | 1/24/2023 | $75.00 | SERVICES |
| PENSKE TRUCK LEASING CO., L.P. | 2675 MORGANTOWN ROAD | | READING | PA | 19607 | | 2/7/2023 | $2,098.03 | SERVICES |
| PENSKE TRUCK LEASING CO., L.P. | 2675 MORGANTOWN ROAD | | READING | PA | 19607 | | 2/14/2023 | $5,792.69 | SERVICES |
| PENSKE TRUCK LEASING CO., L.P. | 2675 MORGANTOWN ROAD | | READING | PA | 19607 | | 2/28/2023 | $1,191.06 | SERVICES |
| PENSKE TRUCK LEASING CO., L.P. | 2675 MORGANTOWN ROAD | | READING | PA | 19607 | | 3/14/2023 | $424.46 | SERVICES |
| **PENSKE TRUCK LEASING CO., L.P. Total** | | | | | | | | **$16,205.82** | |
| | | | | | | | | | |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 1/10/2023 | $1,559.39 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 1/10/2023 | $2,003.32 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 1/10/2023 | $3,537.76 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 1/17/2023 | $2,030.29 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 1/24/2023 | $1,395.30 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 1/31/2023 | $375.23 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 2/7/2023 | $4,558.53 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 2/8/2023 | $5,857.08 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 2/21/2023 | $2,009.54 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 2/28/2023 | $1,683.20 | SERVICES |
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 3/7/2023 | $3,907.48 | SERVICES |

In re: ESCO, Ltd.
Case No. 23-12237 (DER)

**SOFA 3 ATTACHMENT**

Certain payments or transfers to creditors within 90 days before filing this case

| Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Country | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|---|
| PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101 | | 3/14/2023 | $1,826.25 | SERVICES |
| **PEPCO Total** | | | | | | | | **$30,943.37** | |
| | | | | | | | | | |
| POLSINELLI PC | 222 DELAWARE AVE. | SUITE 1101 | WILMINGTON | DE | | | 3/29/2023 | $50,000.00 | RESTRUCTURING EXPENSE |
| POLSINELLI PC | 222 DELAWARE AVE. | SUITE 1101 | WILMINGTON | DE | 19801 | | 3/17/2023 | $200,000.00 | RESTRUCTURING EXPENSE |
| **POLSINELLI PC Total** | | | | | | | | **$250,000.00** | |
| | | | | | | | | | |
| PORTLAND ACCESSORIES, LLC | 2240 N. INTERSTATE #230 | | PORTLAND | OR | 97227 | | 2/7/2023 | $24,956.00 | SUPPLIERS OR VENDORS |
| PORTLAND ACCESSORIES, LLC | 2240 N. INTERSTATE #230 | | PORTLAND | OR | 97227 | | 2/8/2023 | $14,144.00 | SUPPLIERS OR VENDORS |
| **PORTLAND ACCESSORIES, LLC Total** | | | | | | | | **$39,100.00** | |
| | | | | | | | | | |
| PRINCE GEORGE'S COUNTY MD | PO BOX 70526 | | PHILADELPHIA | PA | 19176-0526 | | 1/17/2023 | $1,874.15 | TRADE PAYABLE |
| PRINCE GEORGE'S COUNTY MD | PO BOX 70526 | | PHILADELPHIA | PA | 19176-0526 | | 2/7/2023 | $7,007.06 | TRADE PAYABLE |
| **PRINCE GEORGE'S COUNTY MD Total** | | | | | | | | **$8,881.21** | |
| | | | | | | | | | |
| PRINCIPAL LIFE P | ATTENTION: RIS | 711 HIGH STREET | DES MOINES | IA | 50392 | | 1/6/2023 | $6,804.28 | EMPLOYEE BENEFITS |
| PRINCIPAL LIFE P | ATTENTION: RIS | 711 HIGH STREET | DES MOINES | IA | 50392 | | 1/23/2023 | $10,927.91 | EMPLOYEE BENEFITS |
| PRINCIPAL LIFE P | ATTENTION: RIS | 711 HIGH STREET | DES MOINES | IA | 50392 | | 2/1/2023 | $10,911.97 | EMPLOYEE BENEFITS |
| PRINCIPAL LIFE P | ATTENTION: RIS | 711 HIGH STREET | DES MOINES | IA | 50392 | | 2/16/2023 | $10,961.29 | EMPLOYEE BENEFITS |
| PRINCIPAL LIFE P | ATTENTION: RIS | 711 HIGH STREET | DES MOINES | IA | 50392 | | 3/3/2023 | $10,939.74 | EMPLOYEE BENEFITS |
| PRINCIPAL LIFE P | ATTENTION: RIS | 711 HIGH STREET | DES MOINES | IA | 50392 | | 3/16/2023 | $9,990.41 | EMPLOYEE BENEFITS |
| PRINCIPAL LIFE P | ATTENTION: RIS | 711 HIGH STREET | DES MOINES | IA | 50392 | | 3/30/2023 | $10,449.17 | EMPLOYEE BENEFITS |
| **PRINCIPAL LIFE P Total** | | | | | | | | **$70,984.77** | |
| | | | | | | | | | |
| PROFORMA | PO BOX 640814 | | CINCINNATI | OH | 45264-0814 | | 1/24/2023 | $9,259.31 | SUPPLIERS OR VENDORS |
| **PROFORMA Total** | | | | | | | | **$9,259.31** | |
| | | | | | | | | | |
| PROMAX | THE CIT GROUP/COMMERCIAL SERVI | PO BOX 1036 | CHARLOTTE | NC | 28201-1036 | | 2/7/2023 | $6,988.60 | SUPPLIERS OR VENDORS |
| PROMAX | THE CIT GROUP/COMMERCIAL SERVI | PO BOX 1036 | CHARLOTTE | NC | 28201-1036 | | 2/14/2023 | $36,955.00 | SUPPLIERS OR VENDORS |
| **PROMAX Total** | | | | | | | | **$43,943.60** | |
| | | | | | | | | | |
| PSD UNDERWEAR | PO BOX 841651 | | LOS ANGELES | CA | 90084-1651 | | 2/7/2023 | $48,196.43 | SUPPLIERS OR VENDORS |
| PSD UNDERWEAR | PO BOX 841651 | | LOS ANGELES | CA | 90084-1651 | | 2/8/2023 | $14,532.27 | SUPPLIERS OR VENDORS |
| **PSD UNDERWEAR Total** | | | | | | | | **$62,728.70** | |
| | | | | | | | | | |
| PUMA NORTH AMERICA, INC. | PO BOX 74007020 | | CHICAGO | IL | 60674-7020 | | 2/7/2023 | $35,964.00 | SUPPLIERS OR VENDORS |
| PUMA NORTH AMERICA, INC. | PO BOX 74007020 | | CHICAGO | IL | 60674-7020 | | 2/8/2023 | $73,941.00 | SUPPLIERS OR VENDORS |
| PUMA NORTH AMERICA, INC. | PO BOX 74007020 | | CHICAGO | IL | 60674-7020 | | 2/14/2023 | $78,144.75 | SUPPLIERS OR VENDORS |
| **PUMA NORTH AMERICA, INC. Total** | | | | | | | | **$188,049.75** | |
| | | | | | | | | | |
| RAKUTEN MARKETING LLC | 215 PARK AVENUE SOUTH, 2ND FLOOR | | NEW YORK | NY | 10003 | | 1/10/2023 | $22,323.22 | SERVICES |
| RAKUTEN MARKETING LLC | 215 PARK AVENUE SOUTH, 2ND FLOOR | | NEW YORK | NY | 10003 | | 1/24/2023 | $8,212.50 | SERVICES |
| RAKUTEN MARKETING LLC | 215 PARK AVENUE SOUTH, 2ND FLOOR | | NEW YORK | NY | 10003 | | 1/31/2023 | $2,033.43 | SERVICES |
| RAKUTEN MARKETING LLC | 215 PARK AVENUE SOUTH, 2ND FLOOR | | NEW YORK | NY | 10003 | | 2/14/2023 | $5,276.09 | SERVICES |
| RAKUTEN MARKETING LLC | 215 PARK AVENUE SOUTH, 2ND FLOOR | | NEW YORK | NY | 10003 | | 3/14/2023 | $21,019.75 | SERVICES |
| **RAKUTEN MARKETING LLC Total** | | | | | | | | **$58,864.99** | |
| | | | | | | | | | |
| REPUBLIC SERVICES #050 | PO BOX 9001099 | | LOUISVILLE | KY | 40290-1099 | | 1/10/2023 | $2,998.83 | SERVICES |
| REPUBLIC SERVICES #050 | PO BOX 9001099 | | LOUISVILLE | KY | 40290-1099 | | 2/7/2023 | $2,499.40 | SERVICES |
| REPUBLIC SERVICES #050 | PO BOX 9001099 | | LOUISVILLE | KY | 40290-1099 | | 3/14/2023 | $2,278.16 | SERVICES |
| **REPUBLIC SERVICES #050 Total** | | | | | | | | **$7,776.39** | |
| | | | | | | | | | |
| RIP N REPAIR | 2001 SUNSET LN | | FULLERTON | CA | 92833 | | 2/8/2023 | $10,787.40 | SUPPLIERS OR VENDORS |
| **RIP N REPAIR Total** | | | | | | | | **$10,787.40** | |
| | | | | | | | | | |
| RIVERSIDE REALTY CO. | C/O MAVERICK MANAGEMENT CORP. | 1000 PENNSYLVANIA AVENUE | BALTIMORE | MD | 21223 | | 1/26/2023 | $11,144.33 | TRADE PAYABLE |
| RIVERSIDE REALTY CO. | C/O MAVERICK MANAGEMENT CORP. | 1000 PENNSYLVANIA AVENUE | BALTIMORE | MD | 21223 | | 1/31/2023 | $5,990.72 | TRADE PAYABLE |
| RIVERSIDE REALTY CO. | C/O MAVERICK MANAGEMENT CORP. | 1000 PENNSYLVANIA AVENUE | BALTIMORE | MD | 21223 | | 1/31/2023 | $4,804.83 | TRADE PAYABLE |
| RIVERSIDE REALTY CO. | C/O MAVERICK MANAGEMENT CORP. | 1000 PENNSYLVANIA AVENUE | BALTIMORE | MD | 21223 | | 2/7/2023 | $1,185.89 | TRADE PAYABLE |
| RIVERSIDE REALTY CO. | C/O MAVERICK MANAGEMENT CORP. | 1000 PENNSYLVANIA AVENUE | BALTIMORE | MD | 21223 | | 2/28/2023 | $1,810.44 | TRADE PAYABLE |
| **RIVERSIDE REALTY CO. Total** | | | | | | | | **$24,936.21** | |
| | | | | | | | | | |
| S. ALBERT GLASS COMPANY, INC. | 6600 AMMENDALE ROAD | | BELTSVILLE | MD | 20705 | | 1/4/2023 | $515.00 | SUPPLIERS OR VENDORS |
| S. ALBERT GLASS COMPANY, INC. | 6600 AMMENDALE ROAD | | BELTSVILLE | MD | 20705 | | 2/14/2023 | $500.00 | SUPPLIERS OR VENDORS |
| **S. ALBERT GLASS COMPANY, INC. Total** | | | | | | | | **$1,015.00** | |
| | | | | | | | | | |
| SAUL EWING LLP | PO BOX 825482 | | PHILADELPHIA | PA | 19182-5482 | | 1/4/2023 | $479.39 | PROFESSIONAL |
| SAUL EWING LLP | PO BOX 825482 | | PHILADELPHIA | PA | 19182-5482 | | 1/26/2023 | $8,284.75 | PROFESSIONAL |
| SAUL EWING LLP | PO BOX 825482 | | PHILADELPHIA | PA | 19182-5482 | | 2/14/2023 | $10,055.10 | PROFESSIONAL |

SOFA 3 ATTACHMENT

Certain payments or transfers to creditors within 90 days before filing this case

| Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Country | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|---|
| SAUL EWING LLP | PO BOX 825482 | | PHILADELPHIA | PA | 19182-5482 | | 3/14/2023 | $6,319.35 | PROFESSIONAL |
| **SAUL EWING LLP Total** | | | | | | | | **$25,138.59** | |
| | | | | | | | | | |
| SAUL HOLDINGS LIMITED PARTNERS | ATTN: LEGAL DEPT. | 7501 WISCONSIN AVE., SUITE 1500E | BETHESDA | MD | 20814 | | 1/26/2023 | $8,284.75 | TRADE PAYABLE |
| **SAUL HOLDINGS LIMITED PARTNERS Total** | | | | | | | | **$8,284.75** | |
| | | | | | | | | | |
| SAUL HOLDINGS LIMITED PARTNERSHIP | ATTN: LEGAL DEPT. | 7501 WISCONSIN AVE., SUITE 1500E | BETHESDA | MD | 20814 | | 1/13/2023 | $12,068.00 | LANDLORD |
| **SAUL HOLDINGS LIMITED PARTNERSHIP Total** | | | | | | | | **$12,068.00** | |
| | | | | | | | | | |
| SEC SQUARE HOLDING LLC | 5454 WISCONSIN AVENUE, SUITE 1265 | | CHEVY CHASE | MD | 20815 | | 3/1/2023 | $54,464.42 | TRADE PAYABLE |
| **SEC SQUARE HOLDING LLC Total** | | | | | | | | **$54,464.42** | |
| | | | | | | | | | |
| SPRAY MORET, LLC | DEPT 1370 | 75 REMITTANCE DRIVE | CHICAGO | IL | 60675-1370 | | 1/26/2023 | $10,260.00 | SUPPLIERS OR VENDORS |
| **SPRAY MORET, LLC Total** | | | | | | | | **$10,260.00** | |
| | | | | | | | | | |
| ST. ALBAN'S INVESTMENTS LLC | 406 H STREET, NE. 2ND FLOOR | | WASHINGTON | DC | 20002 | | 1/26/2023 | $15,985.66 | TRADE PAYABLE |
| **ST. ALBAN'S INVESTMENTS LLC Total** | | | | | | | | **$15,985.66** | |
| | | | | | | | | | |
| STANLEY CONVERGENT SECURITY SO | 8350 SUNLIGHT DRIVE | | FISHERS | IN | 46037 | | 1/10/2023 | $32,426.69 | SERVICES |
| STANLEY CONVERGENT SECURITY SO | 8350 SUNLIGHT DRIVE | | FISHERS | IN | 46037 | | 1/24/2023 | $216.21 | SERVICES |
| **STANLEY CONVERGENT SECURITY SO Total** | | | | | | | | **$32,642.90** | |
| | | | | | | | | | |
| STRETTO | 410 EXCHANGE | SUITE 100 | IRVINE | CA | 92602 | | 3/29/2023 | $25,000.00 | RESTRUCTURING EXPENSE |
| **STRETTO Total** | | | | | | | | **$25,000.00** | |
| | | | | | | | | | |
| TIMBERLAND | VF OUTDOOR, LLC | 13911 COLLECTION CENTER DRIVE | CHICAGO | IL | 60693-0328 | | 1/24/2023 | $10,681.20 | SUPPLIERS OR VENDORS |
| TIMBERLAND | VF OUTDOOR, LLC | 13911 COLLECTION CENTER DRIVE | CHICAGO | IL | 60693-0328 | | 2/7/2023 | $15,588.04 | SUPPLIERS OR VENDORS |
| TIMBERLAND | VF OUTDOOR, LLC | 13911 COLLECTION CENTER DRIVE | CHICAGO | IL | 60693-0328 | | 2/14/2023 | $30,376.32 | SUPPLIERS OR VENDORS |
| **TIMBERLAND Total** | | | | | | | | **$56,645.56** | |
| | | | | | | | | | |
| TRUIST FINANCIAL CORPORATION | 214 NORTH TRYON STREET | | CHARLOTTE | NC | 28202 | | 1/30/2023 | $61,741.93 | CREDIT CARD |
| TRUIST FINANCIAL CORPORATION | 214 NORTH TRYON STREET | | CHARLOTTE | NC | 28202 | | 2/28/2023 | $57,131.49 | CREDIT CARD |
| TRUIST FINANCIAL CORPORATION | 214 NORTH TRYON STREET | | CHARLOTTE | NC | 28202 | | 3/28/2023 | $56,867.17 | CREDIT CARD |
| **TRUIST FINANCIAL CORPORATION Total** | | | | | | | | **$175,740.59** | |
| | | | | | | | | | |
| ULINE | PO BOX 88741 | | CHICAGO | IL | 60680-1741 | | 1/24/2023 | $2,023.01 | SUPPLIERS OR VENDORS |
| ULINE | PO BOX 88741 | | CHICAGO | IL | 60680-1741 | | 2/7/2023 | $201.93 | SUPPLIERS OR VENDORS |
| ULINE | PO BOX 88741 | | CHICAGO | IL | 60680-1741 | | 2/14/2023 | $5,219.81 | SUPPLIERS OR VENDORS |
| ULINE | PO BOX 88741 | | CHICAGO | IL | 60680-1741 | | 3/14/2023 | $1,702.55 | SUPPLIERS OR VENDORS |
| **ULINE Total** | | | | | | | | **$9,147.30** | |
| | | | | | | | | | |
| UNDER ARMOUR, INC. | CUSTOMER ID# 11560145 | PO BOX 791022 | BALTIMORE | MD | 21279-1022 | | 2/7/2023 | $21,616.40 | SUPPLIERS OR VENDORS |
| **UNDER ARMOUR, INC. Total** | | | | | | | | **$21,616.40** | |
| | | | | | | | | | |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 1/4/2023 | $18,757.67 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 1/10/2023 | $16,905.40 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 1/24/2023 | $8,846.88 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 1/31/2023 | $10,951.02 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 2/7/2023 | $14,288.39 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 2/14/2023 | $15,507.42 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 2/15/2023 | $17,905.92 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 2/15/2023 | $13,234.05 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 2/16/2023 | $13,234.05 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 2/21/2023 | $32,404.21 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 2/28/2023 | $24,703.36 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 3/7/2023 | $34,261.06 | SERVICES |
| UPS | 14402 YORK RD | | SPARKS | MD | 21152 | | 3/14/2023 | $16,088.38 | SERVICES |
| **UPS Total** | | | | | | | | **$237,088.81** | |
| | | | | | | | | | |
| UTICA NATIONAL INSURANCE GROUP | PO BOX 6532 | | UTICA | NY | 13504-6532 | | 1/24/2023 | $15,602.00 | SERVICES |
| UTICA NATIONAL INSURANCE GROUP | PO BOX 6532 | | UTICA | NY | 13504-6532 | | 2/21/2023 | $20,703.00 | SERVICES |
| UTICA NATIONAL INSURANCE GROUP | PO BOX 6532 | | UTICA | NY | 13504-6532 | | 3/14/2023 | $20,818.00 | SERVICES |
| **UTICA NATIONAL INSURANCE GROUP Total** | | | | | | | | **$57,123.00** | |
| | | | | | | | | | |

In re: ESCO, Ltd.
Case No. 23-12237 (DER)

SOFA 3 ATTACHMENT

Certain payments or transfers to creditors within 90 days before filing this case

| Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Country | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|---|
| VA DEPT TAXATION | P.O. BOX 1478 | | RICHMOND | VA | 23218-1478 | | 1/24/2023 | $1,730.20 | TAXES |
| VA DEPT TAXATION | P.O. BOX 1478 | | RICHMOND | VA | 23218-1478 | | 1/24/2023 | $59,383.66 | TAXES |
| VA DEPT TAXATION | P.O. BOX 1478 | | RICHMOND | VA | 23218-1478 | | 2/22/2023 | $917.03 | TAXES |
| VA DEPT TAXATION | P.O. BOX 1478 | | RICHMOND | VA | 23218-1478 | | 2/22/2023 | $24,746.02 | TAXES |
| VA DEPT TAXATION | P.O. BOX 1478 | | RICHMOND | VA | 23218-1478 | | 3/22/2023 | $1,982.83 | TAXES |
| VA DEPT TAXATION | P.O. BOX 1478 | | RICHMOND | VA | 23218-1478 | | 3/22/2023 | $41,335.57 | TAXES |
| **VA DEPT TAXATION Total** | | | | | | | | **$130,095.31** | |
| | | | | | | | | | |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 1/4/2023 | $2,047.81 | SERVICES |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 1/24/2023 | $3,625.28 | SERVICES |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 1/31/2023 | $2,186.31 | SERVICES |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 2/7/2023 | $3,870.90 | SERVICES |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 2/14/2023 | $1,302.34 | SERVICES |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 2/21/2023 | $2,011.34 | SERVICES |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 2/28/2023 | $1,970.10 | SERVICES |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 3/7/2023 | $2,010.59 | SERVICES |
| WARD TRUCKING LLC | PO BOX 1553 | | ALTOONA | PA | 16603 | | 3/14/2023 | $1,886.36 | SERVICES |
| **WARD TRUCKING LLC Total** | | | | | | | | **$20,911.03** | |
| | | | | | | | | | |
| WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-5047 | | 1/10/2023 | $1,718.33 | UTILITY |
| WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-5047 | | 1/17/2023 | $500.77 | UTILITY |
| WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-5047 | | 1/24/2023 | $4,038.74 | UTILITY |
| WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-5047 | | 1/31/2023 | $1,908.01 | UTILITY |
| WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-5047 | | 2/7/2023 | $718.30 | UTILITY |
| WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-5047 | | 2/21/2023 | $3,879.19 | UTILITY |
| WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-5047 | | 2/28/2023 | $1,090.94 | UTILITY |
| WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-5047 | | 3/7/2023 | $1,364.44 | UTILITY |
| **WASHINGTON GAS Total** | | | | | | | | **$15,218.72** | |
| | | | | | | | | | |
| WASHINGTON SUBURBAN SANITARY C | PO BOX 62135 | | BALTIMORE | MD | 21264-2135 | | 1/10/2023 | $3,804.63 | SUPPLIERS OR VENDORS |
| WASHINGTON SUBURBAN SANITARY C | PO BOX 62135 | | BALTIMORE | MD | 21264-2135 | | 1/17/2023 | $7,935.41 | SUPPLIERS OR VENDORS |
| WASHINGTON SUBURBAN SANITARY C | PO BOX 62135 | | BALTIMORE | MD | 21264-2135 | | 1/31/2023 | $45.78 | SUPPLIERS OR VENDORS |
| WASHINGTON SUBURBAN SANITARY C | PO BOX 62135 | | BALTIMORE | MD | 21264-2135 | | 2/28/2023 | $40.37 | SUPPLIERS OR VENDORS |
| **WASHINGTON SUBURBAN SANITARY C Total** | | | | | | | | **$11,826.19** | |
| | | | | | | | | | |
| WHEATON PLAZA REGIONAL SHOPPIN | 2049 CENTURY PARK EAST, 41ST FLOOR | | CENTURY CITY | CA | 90067 | | 1/26/2023 | $20,873.62 | TRADE PAYABLE |
| WHEATON PLAZA REGIONAL SHOPPIN | 2049 CENTURY PARK EAST, 41ST FLOOR | | CENTURY CITY | CA | 90067 | | 2/7/2023 | $46,151.39 | TRADE PAYABLE |
| WHEATON PLAZA REGIONAL SHOPPIN | 2049 CENTURY PARK EAST, 41ST FLOOR | | CENTURY CITY | CA | 90067 | | 3/1/2023 | $36,257.42 | TRADE PAYABLE |
| **WHEATON PLAZA REGIONAL SHOPPIN Total** | | | | | | | | **$103,282.43** | |
| | | | | | | | | | |
| WILLIAMSON DICKIES MFG. CO. | PO BOX 915156 | | DALLAS | TX | 75391-5156 | | 2/7/2023 | $18,628.00 | SUPPLIERS OR VENDORS |
| **WILLIAMSON DICKIES MFG. CO. Total** | | | | | | | | **$18,628.00** | |
| | | | | | | | | | |
| WM CORPORATE SERVICES, INC. | AS PAYMENT AGENT | PO BOX 13648 | PHILADELPHIA | PA | 19101-3648 | | 1/10/2023 | $5,437.61 | SERVICES |
| WM CORPORATE SERVICES, INC. | AS PAYMENT AGENT | PO BOX 13648 | PHILADELPHIA | PA | 19101-3648 | | 2/7/2023 | $5,785.47 | SERVICES |
| WM CORPORATE SERVICES, INC. | AS PAYMENT AGENT | PO BOX 13648 | PHILADELPHIA | PA | 19101-3648 | | 3/14/2023 | $5,092.79 | SERVICES |
| **WM CORPORATE SERVICES, INC. Total** | | | | | | | | **$16,315.87** | |

**SOFA 4 ATTACHMENT**

Payments or other transfers of property made within 1 year before filing this case that benefited any insider

| Insider's Name | Address 1 | City | State | ZIP | Relationship to the Debtor | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|
| Greenberg Family Trust #4 | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | SHAREHOLDER | 4/5/2022 | $90,523.00 | Distribution Payable |
| **Greenberg Family Trust #4 Total** | | | | | | | **$90,523.00** | |
| | | | | | | | | |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 01/13/2023 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 01/13/2023 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 01/27/2023 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 01/27/2023 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 02/10/2023 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 02/10/2023 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 02/24/2023 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 02/24/2023 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 03/10/2023 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 03/10/2023 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 03/24/2023 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 03/24/2023 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 04/08/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 04/08/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 04/22/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 04/22/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 05/06/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 05/06/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 05/20/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 05/20/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 06/03/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 06/03/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 06/17/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 06/17/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/01/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/01/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/15/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/15/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/29/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/29/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 08/12/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 08/12/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 08/26/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 08/26/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 09/09/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 09/09/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 09/23/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 09/23/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 10/07/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 10/07/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 10/21/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 10/21/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 11/04/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 11/04/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 11/18/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 11/18/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/02/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/02/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/16/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/16/2022 | $50.49 | 401K Contribution |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/30/2022 | $0.00 | Gross Salary |

**SOFA 4 ATTACHMENT**

Payments or other transfers of property made within 1 year before filing this case that benefited any insider

| Insider's Name | Address 1 | City | State | ZIP | Relationship to the Debtor | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/30/2022 | $1,700.00 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/30/2022 | $1,877.38 | Gross Salary |
| Greenberg, Amanda R. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/30/2022 | $50.49 | 401K Contribution |
| **Greenberg, Amanda R. Total** | | | | | | | **$47,390.12** | |
| | | | | | | | | |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 01/13/2023 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 01/13/2023 | $965.02 | 401K Contribution |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 01/27/2023 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 01/27/2023 | $965.02 | 401K Contribution |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 02/10/2023 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 02/10/2023 | $965.02 | 401K Contribution |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 02/24/2023 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 02/24/2023 | $965.02 | 401K Contribution |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 03/10/2023 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 03/10/2023 | $965.02 | 401K Contribution |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 03/24/2023 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 03/24/2023 | $965.02 | 401K Contribution |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 04/08/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 04/08/2022 | $80,000.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 04/08/2022 | $965.02 | 401K Contribution |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 04/22/2022 | $80,000.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 04/22/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 04/22/2022 | $9.84 | 401K Contribution |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 05/06/2022 | $80,000.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 05/06/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 05/20/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 05/20/2022 | $80,000.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 06/03/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 06/03/2022 | $80,000.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 06/17/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 06/17/2022 | $80,000.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 07/01/2022 | $0.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 07/15/2022 | $0.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 07/29/2022 | $0.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 08/12/2022 | $0.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 08/26/2022 | $0.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 09/09/2022 | $0.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 09/23/2022 | $0.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 10/07/2022 | $0.00 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 10/21/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 11/04/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 11/18/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 12/02/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 12/16/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 12/30/2022 | $32,492.31 | Gross Salary |
| Greenberg, Greg M. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | PRESIDENT | 12/30/2022 | $9,970.07 | Gross Salary |
| **Greenberg, Greg M. Total** | | | | | | | **$1,081,596.63** | |
| | | | | | | | | |
| Greenberg, Theodore L. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | CEO | 04/08/2022 | $14,615.42 | Gross Salary |
| Greenberg, Theodore L. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | CEO | 04/08/2022 | $144.69 | 401K Contribution |
| Greenberg, Theodore L. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | CEO | 04/22/2022 | $14,615.42 | Gross Salary |
| Greenberg, Theodore L. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | CEO | 04/22/2022 | $144.69 | 401K Contribution |
| Greenberg, Theodore L. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | CEO | 05/06/2022 | $14,615.42 | Gross Salary |
| Greenberg, Theodore L. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | CEO | 05/06/2022 | $144.69 | 401K Contribution |

**SOFA 4 ATTACHMENT**

Payments or other transfers of property made within 1 year before filing this case that benefited any insider

| Insider's Name | Address 1 | City | State | ZIP | Relationship to the Debtor | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|
| Greenberg, Theodore L. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | CEO | 12/30/2022 | $0.00 | Gross Salary |
| Greenberg, Theodore L. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | CEO | 12/30/2022 | $7,781.86 | Gross Salary |
| **Greenberg, Theodore L. Total** | | | | | | | **$52,062.19** | |
| | | | | | | | | |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 04/08/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 04/22/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 05/06/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 05/20/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 06/03/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 06/17/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/01/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/15/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 07/29/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 08/12/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 08/26/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 09/09/2022 | $2,884.62 | Gross Salary |
| Shade, Tiffany N. | 1800 Woodlawn Drive | Gwynn Oak | MD | 21207-4007 | RELATIVE OF PRESIDENT / CEO | 12/30/2022 | $0.00 | Gross Salary |
| **Shade, Tiffany N. Total** | | | | | | | **$34,615.44** | |

| **Fill in this information to identify the case:** | |
| --- | --- |
| Debtor name: ESCO, Ltd. | |
| United States Bankruptcy Court for the: Maryland | |
| Case number: 23-12237 | ☐ Check if this is an amended filing |

**WARNING** - Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a reasonable belief that the information is true and correct. I declare under penalty of perjury that the foregoing is true and correct.

Executed on
04/24/2023

| /s/ Stanley W. Mastil | Stanley W. Mastil |
| --- | --- |
| Signature of individual signing on behalf of debtor | Printed name |

Chief Restructuring Officer
Position or relationship to debtor

**Are additional pages to Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?**

☐ No
☑ Yes

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re: | (Chapter 11) |
| ESCO, LTD., | Case No. 23-12237 (DER) |
| Debtor. | |
| ESCO, LTD. LIQUIDATING TRUST, Plaintiff, | Adv. Pro. No. 24-00120 (DER) |
| v. | |
| GREG GREENBERG, THEODORE GREENBERG, BETH GREENBERG, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 1, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 2, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 3, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 4, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 5, AMANDA GREENBERG, AND TIFFANY SHADE, | |
| Defendants. | |

52309511.11

## <u>ORDER DISMISSING PLAINTIFF'S COMPLAINT</u>

**AND NOW**, this _____ day of _____, 2024, after

consideration of the *Motion to Dismiss* filed by defendants Greg Greenberg, Theodore Greenberg,

Beth Greenberg, Greenberg Family 2012 Irrevocable Trust No. 1, Greenberg Family 2012

Irrevocable Trust No. 2, Greenberg Family 2012 Irrevocable Trust No. 3, Greenberg Family 2017

Irrevocable Trust No. 4 (incorrectly named in the Complaint as Greenberg Family 2012

Irrevocable Trust No. 4), Greenberg Family 2017 Irrevocable Trust No. 5 (incorrectly named in

the Complaint as Greenberg Family 2012 Irrevocable Trust No. 5), Amanda Greenberg, and

Tiffany Shade, and any response thereto, it is hereby

**ORDERED** that the Motion to Dismiss is **GRANTED**.  The complaint is **DISMISSED**.


### END OF ORDER


cc:
    Gary H. Leibowitz (via CM/ECF)
    James S. Carr (via CM/ECF)
    Levi M. Downing (via CM/ECF)

52309511.11

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re: | (Chapter 11) |
| ESCO, LTD., | Case No. 23-12237 (DER) |
| Debtor. | |
| | |
| ESCO, LTD. LIQUIDATING TRUST, Plaintiff, | Adv. Pro. No. 24-00120 (DER) |
| v. | |
| GREG GREENBERG, THEODORE GREENBERG, BETH GREENBERG, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 1, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 2, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 3, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 4, GREENBERG FAMILY 2012 IRREVOCABLE TRUST NO. 5, AMANDA GREENBERG, AND TIFFANY SHADE, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I served a copy of the foregoing *Motion to Dismiss* electronically via the Court's CM/ECF electronic notification system, on the following:

Gary H. Leibowitz
**COLE SCHOTZ P.C.**
1201 Wills Street, Suite 320
Baltimore, MD 21031
Tel: (410) 528-2971
Fax: (410) 230-0667
Email: gleibowitz@coleschotz.com

52309511.11

-and-

James S. Carr (admitted *pro hac vice*)
Levi M. Downing (admitted *pro hac vice*)
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel:  (212) 808-7800
Fax:  (212) 808-7897
Email: jcarr@kelleydrye.com
ldowning@kelleydrye.com

*/s/ Ashley Fellona*
Ashley Fellona